Ernest L. BELL, III, Plaintiff, Appellant,

v.

UNITED STATES of America et al., Defendants, Appellees.

No. 77–1142.

United States Court of Appeals, First Circuit.

Heard June 3, 1977.

Decided Sept. 9, 1977.

---

1. While the district court made no findings concerning the purpose of the advances, the record clearly reflects that some of the money that was advanced was intended to permit the Barge to purchase supplies and other necessaries, and defendant made no attempt, either in the district court or on appeal, to establish that the rest of the money was either advanced or used for a different purpose. It has, therefore,

forfeited any claim that there is insufficient evidence that some of the advances were intended to enable the purchase of items covered by § 971. *Compare* Fed.R.Civ.P. 46. *Cf. Shepard v. General Motors Co.,* 423 F.2d 406 (1st Cir. 1970); *Fleming v. Van Der Loo,* 82 U.S. App.D.C. 74, 160 F.2d 906 (1947); *Massachusetts Bonding & Ins. Co. v. Preferred Auto Ins. Co.,* 110 F.2d 764 (6th Cir. 1940).

See also 71 F.R.D. 349.

Ernest L. Bell, III, Keene, N. H., with whom Bell & Falk, Keene, N. H., was on brief, for plaintiff, appellant.

Irving Jaffe, Deputy Asst. Atty. Gen., Civil Div., Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., and William J. Deachman, U. S. Atty., Concord, N. H., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, LAY * and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant brought suit under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, to compel disclosure of certain documents gathered and collated by the Allied Intelligence Services under the so-called "ULTRA" program during World War II. The National Security Agency resists disclosure of most of the requested material, claiming exemption under § 552(b)(1) for material "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . in

* Of the Eighth Circuit, sitting by designation.

fact properly classified."[1] The history of appellant's efforts both in and out of court to obtain these documents is more fully set forth in the district court's memorandum opinion of May 7, 1976. *Bell v. United States, Dep't of Defense*, 71 F.R.D. 349 (D.N.H.1976). At that time the court declined to order immediate production of the documents for *in camera* inspection and ordered the defendants to file "detailed affidavits from the agency or agencies controlling these documents, specifying, in particular, the portions of the documents which are exempt and the reasons for their exemption. The affidavits must also specify the substantive and procedural provisions of Executive Order No. 11652 upon which the exemption is based." *Id.* at 356.

On June 21, 1976, defendants responded to the court's order by submitting the affidavit of Norman Boardman, Information Officer of the National Security Agency. The affidavit states that the documents were determined to be properly classified pursuant to EO 11652 on the ground that "unauthorized disclosure of the documents and information contained therein could reasonably be expected to cause exceptionally grave damage to the national security because they would disclose complex cryptographic and communications intelligence systems, methods and sources." The affidavit further recites the procedure under which the Secretary of Defense had reviewed the documents and determined that they should be exempted from automatic declassification pursuant to EO 11652 and extended the classification until 1980. The Secretary had however, "requested that a definite plan for the review and declassification of the documents requested promptly be undertaken to determine whether such documents could be declassified in whole or in part before the extended date." Finally, the affidavit recites that, although Boardman did not examine each and every one of the 500,000 separate documents encompassed by appellant's request, he had personally examined a "representative sampling of the various types of documents" and determined that "because of the nature of the communications intelligence information and operations to which such documents refer, it would be impossible and impracticable to segregate out portions . . . which might conceivably be considered to relate to nonclassified information until the review directed by the Secretary of Defense has been completed."

On January 21, 1977 the district court entered an order granting defendants' motion for summary judgment, observing that, while it was difficult to understand how material which is over thirty years old can pose such a threat to national security, it had no basis for questioning the bona fides of the Boardman affidavit. The court felt it had neither the time nor the expertise to conduct *in camera* inspection of half a million documents and therefore accepted the affidavit as "sufficient to establish the need for continued classification of the documents."

Appellant strenuously argues that the district court abused its discretion in relying on the Boardman affidavit and declining to order *in camera* review of the documents as authorized by 5 U.S.C. § 552(a)(4)(B). While he concedes that cryptographic methods and information would properly be classified information and therefore exempt from disclosure, he asserts that the documents he seeks do not contain technical information about the ULTRA code system itself, but merely the summaries and byproducts of the ULTRA program, i. e., the historical facts that were learned through ULTRA and disseminated in reports known as "Magic summaries".[2] Disclosure of this information, he argues, would reveal nothing about the cryptographic system itself, and therefore classifi-

---

1. Defendants also claim exemption under § 552(b)(3) on the ground that the documents are exempted from disclosure by statute, specifically 18 U.S.C. § 798 and 50 U.S.C.

§ 403(d)(3). The district court found it unnecessary to reach this claim, as have we.

2. Appellant's specific request is set forth in the district court's memorandum. 71 F.R.D. at 351.

cation cannot be justified on the basis asserted by the Boardman affidavit. The district court's refusal to conduct an *in camera* investigation was, in appellant's view, an abdication of its responsibility under the Freedom of Information Act to determine "de novo", 5 U.S.C. § 552(a)(4)(B), whether withheld documents properly fall within the exemption claimed by an agency.[3] We cannot agree.

■ In its May 7 memorandum the district court analyzed thoroughly and, we think, correctly, its powers and responsibilities under the Act, and recognized as well that "a delicate balance must be struck between the Executive's implicit constitutional authority to classify documents in the interests of national security and foreign policy and the Judiciary's explicit constitutional power to interpret the laws of the United States." 71 F.R.D. at 355. While it is clear that the FOIA now authorizes *in camera* review of documents claimed to be exempt on national security grounds, in effect overruling *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), it is also clear that such inspection is not mandated. *Weissman v. Central Intelligence Agency*, 565 F.2d 692, at 696 (D.C.Cir. 1977). The legislative history indicates that, before *in camera* inspection is ordered, an agency should be given the opportunity to demonstrate by affidavit or testimony that the documents are clearly exempt from disclosure, and that the court is expected to accord "substantial weight" to the agency's affidavit. *Id.* at 697 & n.10 (as amended) *quoting* S.Rep. 93–1200, 93d Cong., 2d Sess. 12 (1974). We agree with the District of Columbia Circuit that the test should be whether the affidavit demonstrates by its sufficient description [that] the contested

document logically falls into the category of the exemption indicated. In deciding whether to conduct an *in camera* inspection "it need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Id. See also* S.Rep. No. 93–854, 93d Cong., 2d Sess. 16 (standard of review does not allow court to substitute its judgment for that of the agency, but neither does it require the court to defer to this discretion of the agency; test is whether the withholding is without a reasonable basis under the applicable executive order or statute).

■ The present case illustrates the wisdom of this intermediate standard of review. Whether disclosure of the end-product of cryptographic espionage used in time of war against an enemy power will or will not jeopardize the security of the cryptographic system itself is a judgment that a court simply should not, except perhaps in the most unusual circumstances, be called upon to make. The court could perhaps have requested more detailed information, but we cannot envision, as apparently the district court could not, what kind of information would have enabled it to make such a judgment.[4] The requested material "logically falls into" the exempt category claimed by the agency, and there is no doubt as to the agency's good faith.[5] Any further inquiry would, it seems, require the court to do nothing more than substitute its judgment of the risk to national security for that of the agency. This, certainly, is not what the *in camera* review amendment was intended to accomplish. *See* S.Rep. No. 93–854, *supra.*

*Affirmed.*

---

3. In addition to his claim that the documents are not properly classified as a matter of substance, appellant contends that the proper procedures for exempting material from automatic declassification set forth in EO 11652 § 5(E) were not followed. This claim is without merit. As material classified before the date of the order, the requested documents are governed by subsection (E)(2), not (E)(1).

4. The concession that each document was not examined does not undermine the value of the affidavit, since the dispute here is clearly whether certain classes of documents are properly classified as being related to cryptographic information.

5. Some documents were disclosed in response to the initial FOIA request, and beyond this, the

Secretary of Defense has undertaken a review of all the requested material to determine whether they may be declassified. Appellant has been notified that his request is viewed as a continuing one, and that documents will be disclosed to him as and if they are declassified. While the Secretary's action is arguably an admission that some of the documents do not need to be classified, we do not think the letter or the spirit of the FOIA requires the court to attempt to anticipate the agency's revised judgment.