571 F.2d 538
 Guy DiVIAIO, Petitioner-Appellant,
v.
Clarence M. KELLEY, Director FBI, Wm. E. Colby, Director
CIA, John R. Bartels, Jr., Administrator Drug
Enforcement Administration, Dept. of
Justice, Respondents-Appellees.
 No. 76-1955.
 United States Court of Appeals,
Tenth Circuit.
 Submitted on Briefs Jan. 23, 1978.
Decided March 6, 1978.
 
 George B. Powers of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for petitioner-appellant.
 Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., James P. Buchele, U. S. Atty., Topeka, Kan., Leonard Schaitman, Mark N. Mutterperl, Dept. of Justice, Washington, D. C., for respondents-appellees.
 Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Guy DiViaio, an inmate of the United States Penitentiary at Leavenworth, Kansas, appeals from the trial court's summary judgment granted to the United States whereby the court found that a certain document in the possession of the Central Intelligence Agency (CIA) referring to DiViaio is exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552, et seq., (the Act). DiViaio challenges other findings of the trial court and a purported settlement effecting dismissal of his claim against the federal Drug Enforcement Administration (DEA).
 
 
 2
 DiViaio filed this action seeking to obtain the release of copies of certain "records and files" compiled and maintained by the Federal Bureau of Investigation, the CIA and the DEA which in any way identify or relate to him. He alleged, inter alia, that he was in need ". . . of records and files . . . because (it) has been brought to his attention that contained therein are many misleading, erroneous, unverified statements and ambiguous information that is directly affecting his incarceration, in that it is denying him custody changes, and rehabilitation programs that would otherwise be available to him." (R., p. 37.) In addition to DiViaio's efforts to obtain documentary material, he sought orders of the trial court directing the respective directors of the three federal agencies above named to answer specific questions relating to the manner and the reasons that certain material was acquired or accumulated, and to whom the information had been disseminated.
 
 
 3
 On May 17, 1976, DiViaio dismissed his action against the Federal Bureau of Investigation and its director, Clarence M. Kelley, following receipt from that agency of voluminous documents. With regard to the DEA and its Director, DiViaio's petition of May 17, 1976 prayed for an order ". . . granting all released documents that the agency refers to in their (its) affidavits, to be given the Petitioner in forma pauperis as provided in 5 U.S.C., § 552, and dismissal of the action without Prejudice to the Petitioner." (R., p. 303.) Thereafter, the trial court granted the motion of defendants Colby, Director, and the CIA and Dogin, Director, and the DEA for summary judgment based upon the pleadings, the affidavits filed in support of the motions and the entire record. The court found that there was no genuine issue as to any material fact and that the defendants were entitled to summary judgment as a matter of law. The action was then dismissed as to all defendants without prejudice.
 
 
 4
 This Court, on appeal, appointed Attorney George B. Powers of Wichita, Kansas, to serve as counsel for DiViaio. Mr. Powers communicated with attorneys representing the defendants Dogin and the DEA in accord with DiViaio's request of May 17, 1976, to-wit, that the voluminous documents compiled by DEA consisting of 339 pages be released to DiViaio under the Freedom of Information Act without cost to him. The DEA had agreed to release the documents only upon receipt of copying fees of $50.86. A settlement proposal was received by Mr. Powers from Government counsel for DEA whereby the DEA agreed to waive the copying fees of $50.86 and to release the documents to DiViaio if DiViaio dismissed the appeal as to Dogin and the DEA. Mr. Powers contacted DiViaio, who accepted these terms. However, when the settlement proposal was firmly agreed upon between counsel for the parties, DiViaio refused to honor it on the ground that he had not previously agreed to a dismissal of his action against DEA with prejudice as set forth in the settlement agreement. DiViaio contended that he may, at some future date, wish to renew his request for the documents withheld by the DEA. DiViaio's counsel advised him that, in his opinion, a binding settlement had been reached. In light of the contrary positions taken on this matter by Attorney Powers and DiViaio, Mr. Powers was permitted by this court to withdraw as counsel for DiViaio prior to oral arguments. DiViaio then agreed to submit the settlement issue for decision by this Court upon waiver of oral arguments by the parties.
 
 I.
 
 5
 DiViaio's first challenge is directed to the issue as to whether there was a binding settlement agreement that his dismissal of Dogin and DEA was with prejudice. He contends that the dismissal was to be without prejudice. We hold that DiViaio's contention is without merit.
 
 
 6
 The record reflects that Attorney Powers contacted DiViaio after careful consideration of the problems and following negotiation conversations and correspondence with counsel for DEA. Clearly, DEA agreed to release the 339 pages of documents and to waive the copying fee only upon dismissal with prejudice. This, we believe, was implicit in the September 14, 1977 letter from Attorney Powers to DiViaio. In that letter, Mr. Powers refers to the 339 pages of documents compiled by DEA as constituting exclusively those documents which DEA agreed to be subject to production under the Act. DiViaio did not then nor does he now contend that the withheld DEA documents are subject to release.
 
 
 7
 DiViaio's petition of May 17, 1976 heretofore referred to, specifically prayed only for the release of the 339 pages of documents without cost to him. No other relief was sought except a recital that the dismissal be without prejudice. Thus, it is obvious that in view of DEA's full compliance with the requirement of the Act, there was no cause then remaining by DiViaio against DEA. One Thomas G. McWeeney, Staff Assistant assigned to the Freedom of Information Division, Office of the Chief Counsel, DEA, executed an affidavit which, in summary, states that DEA undertook a thorough research of its documentary records and that 339 pages or portions thereof were processed for release to DiViaio. The affidavit further states that some 749 pages were withheld (following review and concurrence by the Attorney General of the United States) as exempt from disclosure pursuant to the Act, in that these pages contain information: relating to the internal rules and practices of the DEA; relating only to interagency communications; the disclosure of which would reveal the identity of confidential sources and confidential information; disclosing investigative techniques and procedures together with names and identities of DEA special agents, personnel and informants, whose disclosure would have a detrimental effect on the successful operation of DEA. (R., pp. 100-111.) DiViaio did not contest these deletions based upon the claimed exemptions under the Act by filing an appeal from the agency determination reviewed by the Deputy Attorney General who specifically found, on a page by page review, that the documents withheld by the DEA are exempt from disclosure. Even though DiViaio was specifically advised of this available remedy and that the review disclosed that the documents offered him constitute 90% Of all of the materials relating to him, he did nothing to pursue the appeal. (R., pp. 118, 119.) Thus, there is a serious question whether DiViaio intentionally by-passed available administrative remedies.
 
 
 8
 Notwithstanding the serious question involving DiViaio's by-pass, supra, we hold that the proper procedures of the Act have been followed and that the withholding claims of the DEA are not unreasonable and that the contested documents fall into the exempt category. The settlement thus reached was, under the totality of the circumstances, a compromise between the parties litigant whereby DEA agreed to the release to DiViaio, without payment by him of copying costs and fees, documents consisting of 339 pages in consideration for DiViaio's dismissal of his action seeking other DEA documents. Such mutual settlement we hold, necessarily dictates a dismissal with prejudice. There could hardly be a compromise settlement under any other circumstances. The dismissal with prejudice is in accord with a valid, binding settlement reached between DiViaio and DEA. To hold otherwise would render the compromise a "one-way street" in that DiViaio would receive the 339 pages of documents by reason of the Government's waiver of his payment of the copying fees without anything in return from him except his dismissal of this action only insofar as it relates to the 339 pages. It is difficult to ascertain just what DiViaio is surrendering or giving to DEA in return for the 339 pages cost free if it is not in fact a dismissal of his cause of action and claim with prejudice.
 
 II.
 
 9
 DiViaio contends that the trial court erred in granting summary judgment to Colby, Director, and the CIA without permitting him to conduct discovery.
 
 
 10
 On May 16, 1975 DiViaio was advised by the CIA that its records contained only one document relevant to him and that it was to be withheld from him under the exemptions from disclosure provisions in 5 U.S.C. § 552(b)(1) and (3) as a document properly classified under Executive Order in the interest of national security. On May 20, 1975 DiViaio appealed this determination to the CIA's Information Review Committee. On June 20, 1975 the Committee advised DiViaio that it had determined that the document containing information on him was not subject to release in that it is properly classified (secret) in accordance with Executive Order 11652 and ". . . consists of information concerning intelligence sources and methods which the Director of Central Intelligence has the responsibility to protect from unauthorized disclosure in accordance with section 102(d)(3) of the National Security Act of 1947, as amended. Consequently . . . your (appeal is denied) as to this document on the basis of exemptions (b)(1) and (b)(3) of the Freedom of Information Act." (R., p. 94.) DiViaio appealed therefrom.
 
 
 11
 One Charles A. Briggs, Chief, Services Staff of the Directorate of Operations of the CIA, executed an Affidavit considered by the trial court in rendering the summary judgment wherein Briggs stated that the subject document is a dispatch from a CIA station overseas to CIA Headquarters; that transmitted by the dispatch (two pages in length) is a seven-page document which contains no information on DiViaio and a two-page document containing information concerning DiViaio provided by an intelligence source; that the dispatch, with attachments (referred to here as document) consists of eleven pages, classified SECRET with notations thereon; that the document identifies a foreign country in which a CIA station is located, employees assigned thereto and information identifying intelligence sources, methods, collection projects and the names of confidential informants; that if the document should be publicly disclosed it could be expected to result in ". . . a serious deleterious effect on United States relations with the government of the country in which the CIA station . . . was located . . . confidential sources of intelligence information can be expected to furnish information only so long as they feel secure in the knowledge that they are protected from retribution or embarrassment by the pledge of confidentiality. . . . In the case of a foreign national who has been willing to act as an agent or informant for American intelligence (who) . . . is exposed, the consequences are swift and sure. That individual faces imprisonment or, possibly, death. . . . Informants who do remain within their society are at all times subject to retribution if and when they are discovered. . . . Intelligence methods must be protected in cases where the capability itself, or the application of certain techniques, is unknown to those who would take countermeasures." (R., pp. 95-99.)
 
 
 12
 On appeal, DiViaio does not directly challenge the basis for exemption from disclosure tied to the legitimate national security interests of the United States succinctly set forth in Briggs' Affidavit. However, he contends: (1) that he is entitled, under the Act, to require in a general discovery sense that the CIA reveal whether any of its agents have ever photographed him and, if so, whether they have disseminated the photographs outside the agency, and (2) that the District Court erred in failing to make and render specific findings of fact required in granting summary judgments. We disagree.
 
 
 13
 DiViaio's so-called "discovery" request for photographs taken of him by CIA agents, if ever, and if so whether same have been disseminated outside of the agency are clearly demands not countenanced by the scope and reach of the Freedom of Information Act. Rather than seeking documents, as contemplated by the Act, DiViaio seeks answers to interrogatories relating thereto.
 
 
 14
 The Freedom of Information Act requires all federal agencies to make public their records to any person requesting them unless the records contain material which is exempt from disclosure by reason of one of the nine specific exemptions set forth in 5 U.S.C.A. § 552(b). The Act does not define the terms "records." However, it has been held that under such circumstances, reliance may be placed on a dictionary meaning of the word "record" defined as that which is written or transcribed to perpetuate knowledge or events. Nichols v. United States, 325 F.Supp. 130 (D.C.Kan.1971), affirmed, 460 F.2d 671 (10th Cir. 1972), cert. denied, 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972). The Act's purpose was that of expanding a citizen's access to governmental information in a manner that disclosure was to be the rule rather than the exception, but not at the risk of disclosing information whose confidentiality was necessary to protect legitimate governmental functions. FAA Administrator v. Robertson, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975).
 
 
 15
 The exemption upheld by the trial court here is that set forth in 5 U.S.C.A. § 552(b)(1) which provides that disclosure shall not apply "to matters" specifically authorized under criteria established by Executive Order to be kept secret in the interest of national defense or foreign policy and which are in fact properly classified pursuant to such Order. In the case at bar Executive Order No. 11652 applies. It defines, for our purposes, the "secret" classification of national security information or material whose disclosure would seriously damage national security or foreign relations significantly affecting national security. Under the Act, as amended in October of 1974, federal district courts, in making de novo determinations of exempt status in § 552(b)(1) cases, are to accord substantial weight to an agency's affidavit concerning the details of classification status of the disputed documents or records. The trial court is vested with discretion as to whether to act on the basis of the testimony or affidavits or to inspect the document in camera. In the instant case, the trial court elected to rely upon the Affidavit and its accompanying attachments. The trial court did not err.
 
 
 16
 We agree with the holdings in Weissman v. Central Intelligence Agency, 565 F.2d 692 (D.C.Cir. 1977) and Bell v. United States, 563 F.2d 484 (1st Cir. 1977). These courts there held that while the Freedom of Information Act authorizes in camera review of documents claimed to be exempt, such an inspection is not mandated and before an in camera inspection is ordered the agency should be given an opportunity to demonstrate by affidavit or testimony that the documents are clearly exempt from disclosure. The opinions further hold that the District Court must accord substantial weight to the agency's affidavits.
 
 
 17
 Applying the rule set forth in Weissman, supra, and Bell, supra, to the instant case, it is clear that nothing in the Act requires "answers to interrogatories" but rather and only disclosure of documentary matters which are not exempt. The rule further dictates that if the agency (as here) diligently and conscientiously submits affidavits summarizing the matters withheld wherein it clearly indicates the rationale for the claimed exemption, the trial court need not undertake an in camera inspection of the documents.
 
 
 18
 Certainly the so-called "discovery" matters sought by DiViaio do not come within the reach of the Act. They do not involve disclosure of documents or documentary matters which could have any bearing upon the content of any record or documents. While it may be of some unidentifiable personal interest to DiViaio to know whether the CIA ever photographed him and whether any photographs of him have been disseminated outside the agency, such interest cannot overcome the compelling need of the Government agency to protect the national security. In Weissman, supra, the Court aptly observed:
 
 
 19
 . . . Few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information. Congress was well aware of this problem, and when it amended the FOIA to permit in camera inspection in exemption (b)(1) cases, it indicated that the court was not to substitute its judgment for that of the agency. If exemption is claimed on the basis of national security the District Court must, of course, be satisfied that proper procedures have been followed, that the claim is not pretextual or unreasonable, and that by its sufficient description the contested document logically falls into the category of the exemption indicated. It need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith.
 
 
 20
 In every FOIA case, there exists the possibility that Government affidavits claiming exemptions will be untruthful. Likewise, in every FOIA case it is possible that some bits of nonexempt material may be found among exempt material, even after a thorough agency evaluation. If, as appellant argues, these possibilities are enough automatically to trigger an in camera investigation, one will be required in every FOIA case. This is clearly not what congress intended, nor what this Court has found to be necessary.
 
 
 21
 565 F.2d, at p. 697.
 
 
 22
 WE AFFIRM.