**Victor S. NAVASKY, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

**No. 77 Civ. 982 (CMM).**

United States District Court, S. D. New York.

Sept. 10, 1980.

270

Clark, Wulf, Levine & Peratis, New York City, for plaintiff; Leon Friedman, Melvin L. Wulf, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, for defendant; Patrick H. Barth, Asst. U. S. Atty., New York City, of counsel.

METZNER, District Judge:

This matter is before the court on defendant's motion for summary judgment.

Plaintiff, a journalist and magazine editor, instituted the action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking disclosure of all documents relating to clandestine book publishing activities of the defendant, Central Intelligence Agency (CIA), throughout the world.[1] Such activity was briefly discussed in the Final Report of the Select Committee to Study Governmental Operations with Respect to Intelligence Activities. S.Rep.No. 94–755, 94th Cong. 2d Sess. (1976) (Church Committee Report), vol. 1 at 192–95, 198–99, 453–54.

For the reasons discussed below, partial summary judgment is granted at this time.

In 1977, after plaintiff's initial request for the subject documents had been denied through administrative appeal, plaintiff filed this suit to require production of three categories of documents: (1) "The titles, authors and publishers of the 'well over a thousand books' referred to in Volume I" of the Church Committee Report; (2) "All CIA materials made available to the members of the staff of the Church Committee relating to books produced, subsidized or

---

1. Suit was originally commenced on behalf of plaintiff and Harper's Magazine in February 1977. Thereafter Harper's withdrew from the action and on April 15, 1977, plaintiff filed an amended complaint solely on his own behalf.

sponsored by the CIA up to the present time;" and (3) "All other CIA materials and files relating to" such books "whether or not made available to the Church Committee."

The CIA in its answer claimed exemption under the FOIA. Plaintiff then filed a motion for a detailed justification and index of the CIA's claims of exemption pursuant to *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The CIA responded with an index of 85 documents in answer to the first two categories of plaintiff's request for production.[2] A 20–page affidavit of John H. Stein, Associate Deputy Director of the Directorate of Operations of the CIA, accompanying the index, set forth the justification for withholding the documents. Expurgated copies of 61 of the 85 documents were attached to the index, with all substantive content deleted. On the basis of these submissions, the CIA now moves for summary judgment.

Before turning to the merits of the instant motion, the court will dispose of the question of in camera inspection that has arisen as a result of the order of October 12, 1979. At that time the court ordered production of certain of the indexed documents for in camera inspection. After further consideration, however, it has become clear that in camera inspection would serve no useful purpose at this time.

■ There is no doubt that, subsequent to the 1974 amendments to the FOIA, a court may order in camera inspection of exemption 1 and 3 materials. *See, e. g., Lead Industries Association, Inc. v. Occupational Safety and Health Administration,* 610 F.2d 70, 87 (2d Cir. 1979); *Ray v. Turner,* 587 F.2d 1187, 1194, 1195 (D.C.Cir.1978); *Weissman v. CIA,* 565 F.2d 692, 696 (D.C. Cir.1977); *Bell v. United States,* 563 F.2d 484, 487 (1st Cir. 1977).

"The ultimate criterion is simply this: whether the district judge believes that in camera inspection is needed in order to make a responsible de novo determination on the claims of exemption." *Ray v. Turner, supra* at 1195.

■ In camera inspection is essential to responsible de novo determination where the agency's public description of the withheld material is insufficient to allow the court to determine whether its nature is such as to justify nondisclosure under the claimed exemption, or where the court, based on the record before it, wishes to satisfy an "uneasiness" or "doubt" that the exemption claim may be overbroad. *Ray v. Turner, supra* at 1195; *Lamont v. Department of Justice,* 475 F.Supp. 761, 768–69 (S.D.N.Y.1979).

■ In the instant case, there is no issue as to the nature of the items deleted by the CIA. Plaintiff's argument is that the materials *as described* by the agency are not properly withheld. Furthermore, for the reasons discussed below, it is premature for the court to determine whether some of the defendant's claims are overbroad and whether nonexempt portions can be segregated. Resolution of these questions demands more complete agency justification of certain of its exemption claims. *See Founding Church of Scientology v. National Security Agency,* 610 F.2d 824, 833 (D.C.Cir. 1979). The court therefore withdraws the order for in camera inspection.

Defendant justifies its nondisclosure of the material on the basis of FOIA exemptions 1, 3 and 5. 5 U.S.C. § 552(b)(1), (3) and (5).

Exemption 1 excludes matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The CIA claims that the deleted material is currently and properly classified pursuant to Executive Order 12065, 3 Fed.Reg. 190 (June 28, 1978) (the EO), under which information concerning "intelligence activities, sources or methods" or "foreign relations or foreign activities of the United States" may be

---

2. Plaintiff has withdrawn his request for an index of the third category.

classified if "an original classification authority . . . determines that its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security." EO 12065 § 1–301(c), (d), § 1–302.

Exemption 3 excludes "matters that are . . . specifically exempted from disclosure by statute . . . ." The CIA relies on the final proviso of section 102(d)(3) of the National Security Act of 1947 (sometimes referred to as the CIA charter), 50 U.S.C. § 403(d)(3), which states that "the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure."

Exemption 5 exempts "inter–agency or intra–agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

The principal issues raised herein involve the question of whether exempt status should be accorded to the focal item of plaintiff's request, namely, "the list of English language books, published in the United States with secret CIA funds," and more specifically, "the authors and titles of American–made books where the author was unaware of CIA involvement." Plaintiff requested the other materials "only to insure that the request would encompass [his] chief interest . . . ." and the issues arising with respect to them do not require extended discussion.

■■■ Several general principles guide the court in its review of the CIA's exemption claims herein. First, the court must make a de novo determination, but in doing so it must accord "substantial weight" to agency affidavits. *Hayden v. National Security Agency/Central Security Service*, 608 F.2d 1381, 1384 (D.C.Cir.1979); *Ray, supra* at 1194; *Weissman, supra* at 697 n. 10; S.Rep.No.1200, 93d Cong., 2d Sess. 12 (1974). Second, the agency has the burden of justifying nondisclosure by establishing the applicability of the exemption to the particular material. 5 U.S.C. § 552(a)(3); *Hayden, supra*, at 1386; *Vaughn v. Rosen, supra* at 823. Specifically, "[i]f the exemp-

tion is claimed on the basis of national security, the District Court must . . . be satisfied that proper procedures have been followed and that by its sufficient description the contested document logically falls into the category of the exemption indicated." *Ray, supra* at 1195; *Weissman, supra* at 697. See also, *Hayden, supra* at 1387. Third, the FOIA exemptions are to be construed narrowly, "in such a way as to provide the maximum access consonant with the overall purposes of the Act." *Vaughn, supra* at 823. See also, *Hayden, supra*, at 1386; *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1011 n. 2 (D.C.Cir.1976). Finally, "[i]t is well settled in Freedom of Information Act cases as in any others that '[s]ummary judgment may be granted only if the moving party proves that no substantial and material facts are in dispute and that he is entitled to judgment as a matter of law.'" *Founding Church of Scientology*, 610 F.2d at 836, quoting from *National Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C.Cir.1973).

With these principles in mind, we turn now to the contentions of the parties.

We will first discuss exemption 3. Plaintiff contends that the activities concerning which he is seeking information were *ultra vires* the CIA charter. The court is aware of four cases in which illegal CIA activity was claimed as the basis for denying the exemption. In *Weissman v. CIA*, 565 F.2d 692 (D.C.Cir.1977), the court found that there was no basis for justification under exemption 7 where the action was illegal under the CIA charter. However, that holding was predicated on the limitation in exemption 7 to a "*lawful* national security intelligence investigation . . . ." (Emphasis added.) However, the court remanded the matter to the district court to determine whether the same nondisclosures were justified under exemption 3. The inference to be drawn from such action is that illegality is not a bar to an otherwise valid justification under exemption 3.

A similar inference flows from the remand in *Marks v. Central Intelligence Agency*, 590 F.2d 997 (D.C.Cir.1978).

This position has been confirmed, albeit somewhat cryptically, in the footnote of a recent decision involving an exemption 3 claim by the National Security Agency (NSA). *Founding Church of Scientology, supra* at 829 n. 49. The court, after citing the plaintiff's reliance in that case on the "recent investigation by the Church Committee of gross illegalities on the part of intelligence agencies," noted in passing that:

"Although NSA would have no protectable interest in suppressing information simply because its release might uncloak an illegal operation, it may properly withhold records gathered illegally if divulgence would reveal currently viable information channels . . . ."

The court offered no further discussion of the point. However, it seems clear that it considered the question of illegality irrelevant to the exemption claims, which it found to turn on the sole issue of whether intelligence sources, illegal or legal, would be revealed.

Finally, on a motion to compel answers to interrogatories requesting a specification whether a CIA intelligence source or method was "domestic," one district court has ruled that "[t]o the extent that such a source may be used, unlawfully, in a domestic investigatory or intelligence activity, the clear implication of *Weissman* is that the lawfulness of the activity is not relevant to the CIA's successful invocation of exemption (b)(3)." *Marks v. Turner*, Docket No. 77–1108 (D.D.C. June 6, 1978) at 3.

Consequently, I find that a claim of activities *ultra vires* the CIA charter is irrelevant to an exemption 3 claim.

There still remains under exemption 3, however, the questions of whether the book publishing activities described in the Church Committee Report constitute "intelligence methods" and whether the authors and publishers of the books are "intelligence sources" within the meaning of section 403(d)(3). Defendant has flatly asserted that they are, while plaintiff strenuously urges that they are not, without further elaboration.

There is a paucity of information regarding the phrase "intelligence sources and methods." It is not defined in the National Security Act of 1947, and it received very little treatment in the congressional debates. *See* Church Committee Report at 138–39. Nevertheless, defendant bears the burden of justifying nondisclosure, and it has not convinced the court that authors, publishers and books logically fall into the categories of "intelligence sources and methods."

Section 403(d)(3) empowers the CIA "to correlate and evaluate intelligence relating to the national security and provide for the appropriate dissemination of such intelligence within the Government," and provides that the other agencies "shall continue to collect, evaluate, correlate and disseminate departmental intelligence."

The Church Committee defines "intelligence" as "the product resulting from the collection, collation, evaluation, analysis, integration, and interpretation of all collected information." Church Committee Report, vol. 1 at 624.

Indeed, nothing in the legislative history of the Act indicates that covert propaganda activities of the kind involved here were contemplated by Congress. *See* Church Committee Report at 132, 476–492. It is therefore doubtful that the term "intelligence" as used in Section 403(d)(3) was intended to include such activities.

Finally, the National Security Council directive which first authorized the CIA to conduct covert "psychological" (propaganda) operations under the authority of the National Security Act of 1947 justified that authorization as follows: "The similarity of operational methods involved in covert psychological and intelligence activities . . . renders the CIA the logical agency to conduct such operations." NSC–4–A, 12/17/47. Church Committee Report at 490. This directive recognizes that it is dealing with separate and distinct activities related solely by the similarity of methods used in each.

■ I accept the definition of "intelligence" as formulated by the Church Committee and apply it to the word as used in section 403(d)(3). Essentially it is a product resulting from the original collection of information. The "intelligence sources and methods" language of section 403(d)(3), therefore, cannot be applied to protect authors, publishers and books involved in clandestine propaganda activities from disclosure.[3]

This conclusion is bolstered by the general rule that FOIA exemptions are to be construed narrowly, *Vaughn, supra* at 823; *Hayden, supra* at 1386; *Phillippi, supra* at 1011 n. 2; *Founding Church of Scientology, supra* at 829.

Of course, it may be that, although authors, publishers and books themselves are not intelligence sources and methods, their disclosure in some or all cases could reasonably be expected to lead to disclosure of intelligence sources and methods. Similarly, disclosure may lead to the disclosure of the names of CIA personnel exempted under section 403g. In either case, nondisclosure would be proper. *See, e. g., Phillippi, supra* at 1015 n. 14. However, because defendant has justified nondisclosure on the assumption that authors, publishers and books were intelligence sources and methods, it is impossible for the court, on the basis of the affidavit presently before it, to distinguish the valid from the invalid exemption claims. Therefore, summary judgment is inappropriate at this time on the basis of exemption 3.

Exemption 1 requires separate analysis. Although both section 403(d)(3) and the EO protect "intelligence sources and methods" (EO § 1–301(c)), the EO also permits classification of documents concerning "foreign relations or foreign activities of the United States" (EO § 1–301(d)). For the reasons discussed above in conjunction with exemption 3, Section 1–301(c) does not sustain a claim under exemption 1 on the basis of the affidavit submitted by defendant. However, documents shown to concern foreign relations or activities of the United States could properly be classified if their disclosure "reasonably could be expected to cause at least identifiable damage to the national security." EO § 1–302.

■ Plaintiff's *ultra vires* challenge based on EO § 1–601 has no relevance for the very same reason that this challenge fails as to exemption 3. Section 1–601 prohibits "classification to conceal violations of law . . . ." The only issue to be considered here is whether the withheld document concerns foreign relations or activities of the United States and whether disclosure reasonably could be expected to cause identifiable damage to the national security. *See, Bennett v. United States Department of Defense,* 419 F.Supp. 663, 666 (S.D.N.Y. 1976). If properly classified under section 1–301(d) and 1–302, then by definition it has not been classified "to conceal violations of law" as prohibited by section 1–601. Furthermore, any documents properly classified under EO § 1–301(c) as intelligence sources, activities and methods, as "intelligence" has been defined, would be subject to protection under exemption 3, regardless of their *ultra vires* nature.

■ Plaintiff challenges the exemption 1 claim on the ground that Stein failed to balance the public interest in disclosure against the need for classification. Such balancing, however, is not a requisite of classification. It is used only in reviewing presently classified documents to determine whether the classification should be continued.

---

3. The court does not understand defendant to withhold the list of books, authors and publishers on the basis of 50 U.S.C. § 403g. Such a claim would not succeed. Authors and publishers of books clandestinely sponsored by the CIA cannot be considered agency personnel. Furthermore, "Section 403g creates a very narrow and explicit exception to the requirements of the FOIA. Only specific information on the CIA's personnel and internal structure that is listed in the statute will obtain protection from disclosure." *Baker v. Central Intelligence Agency,* 580 F.2d 664, 670 (D.C.Cir.1978). *See also, Phillippi v. Central Intelligence Agency,* 546 F.2d 1009, 1015 n. 14 (D.C.Cir.1976).

When making such review, section 3–303 requires the agency to weigh the public interest in disclosure only when "questions arise" as to whether the interest in disclosure outweighs the further need for classification. The EO does not specify how such questions "arise"; that issue was left to the agencies. *See* Brzezinski letter of November 30, 1978. The CIA regulation implementing section 3–303 enumerates five circumstances in which a question is deemed to arise as to whether the public interest in disclosure outweighs continued classification. These criteria seem perfectly reasonable. Stein has determined that none of these circumstances exist in the present case and therefore that a balancing is not required here. The court agrees.

We turn then to the question remaining as to whether defendant's "foreign relations and activities" claim has sufficiently set forth a "reasonable basis for finding potential harm from disclosure." *Hayden, supra* at 1387.

■ This aspect of de novo review, especially in the area of national security, is circumscribed by the congressional mandate that a court accord "substantial weight" to agency affidavits. S.Rep.No.1200, 93d Cong., 2d Sess. 12 (1974), U.S.Code Cong. & Admin.News 1974, p. 6267. The court, in examining the Agency's arguments, is not to substitute its judgment for that of the Agency in this area of agency expertise, for "[f]ew judges have the skill or experience to weigh the repercussions of disclosure" of such information. *Weissman, supra* at 697. *See also Hayden, supra* at 1388; *Bell v. United States*, 563 F.2d at 487; *Ferry v. Central Intelligence Agency*, 458 F.Supp. 664, 667, 668 (S.D.N.Y.1978); *Halperin v. Central Intelligence Agency*, 446 F.Supp. 661, 665, 667 (D.D.C.1978).

■ After review of the *Stein* affidavit the court finds that plausible justifications of identifiable damage to the national security have been made with respect to the following: (1) information identifying a foreign country involved; (2) the existence of a liaison with foreign governments or foreign intelligence services; (3) the loca-

tion of CIA overseas installations; (4) the identities of individuals in foreign countries, disclosure of which would endanger their lives; (5) United States sponsorship of covert operations in foreign countries; (6) information disclosure of which would otherwise subvert foreign covert operations; (7) information disclosure of which would disrupt foreign relations; (8) information regarding intelligence activities, sources and methods as "intelligence" has been defined herein; (9) information from foreign intelligence services (see EO § 1–303); (10) cryptonyms and pseudonyms.

The court expressly rejects the defendant's claim of identifiable harm based on possible loss of employment, harm to reputation, or embarrassment resulting to those exposed. The EO does not exempt material due to the possibility of such consequences. See EO § 1–601. Such claims are more properly raised under the privacy provisions of exemption 6–a route which defendant has expressly declined to follow.

Plaintiff argues, however, that prior disclosure of several of the titles and operational details of the CIA's book publishing activities in the Church Committee Report and in the media belies the defendant's claim of present threat of identifiable harm required by the EO. Certainly, the fact that titles already have been released, whether officially or unofficially, disposes of defendant's "blueprint" theory, *i. e.*, that the disclosure of one title will allow persons interested in exposing CIA activities to uncover the general modus operandi of such projects. Suppressing information on that theory would frustrate the policies of the FOIA without even arguably advancing countervailing considerations. *See, Founding Church of Scientology, supra* at 832.

However, the CIA also asserts that Agency disclosure would constitute official acknowledgment of its involvement in *foreign* clandestine book publishing activities, and, as such, could have serious foreign relations consequences. This argument appears eminently reasonable; in the area of international diplomacy there is a difference between unofficial speculation and official ac-

knowledgment of government action. *Marks v. Central Intelligence Agency*, 426 F.Supp. 708, 712 (D.D.C.1976), *aff'd*, 590 F.2d 997 (D.C.Cir.1978). *See also, Halkin v. Helms*, 598 F.2d 1, 10 (D.C.Cir.1978); *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir.), *cert. denied*, 421 U.S. 992, 95 S.Ct. 1999, 45 L.Ed.2d 702 (1975); *Fensterwald v. Central Intelligence Agency*, Docket No. 75–897 (D.D.C. July 18, 1978).

Since in this case proper nondisclosure under exemption 1 has been limited to information which would have foreign relations consequences if released (EO § 1–301(d)), plaintiff's attack based on prior disclosure must fail.

The fact that some of the documents pertain to activities over thirteen to thirty years old does not per se divest them of current national security significance. *Bell v. United States*, 563 F.2d at 486. Stein has found that disclosure of the material withheld would pose present national security risks. "This is precisely the sort of situation where Congress intended reviewing courts to respect the expertise of an agency . . . ." *Hayden v. National Security Agency, supra* at 1388. *See also* S.Rep.No. 1200, *supra* at 12; *Fensterwald v. Central Intelligence Agency, supra*. Therefore plaintiff's bald assertion to the contrary cannot defeat defendant's exemption claim.

Plaintiff's reiteration of the arguments of prior disclosure and alleged staleness in the exemption 3 context is clearly improper. A showing of potential harm is generally not required to sustain an exemption 3 claim. *Baker v. Central Intelligence Agency, supra; Goland v. Central Intelligence Agency*, 607 F.2d 339 (D.C.Cir.1978); *Marks v. Turner, supra*.

Plaintiff attacks the claims for exemption under 1 and 3 on the ground that the justification submitted by the government is descriptively insufficient. This contention brings the court to a consideration of the requirement in de novo review that "by its sufficient description, [each] contested document logically falls into the category of the exemption indicated." *Ray v. Turner, supra* at 1195; *Weissman, supra* at 697; *Hayden, supra* at 1387.

The agency's affidavit will pass muster in this regard if it (1) shows in nonconclusory and detailed fashion that the deleted material involves an exempted category of material; (2) lists the deletions; (3) makes clear which exemptions are claimed for the deletions; and (4) explains why the deleted material fits in with the exemption claimed. *Goland v. Central Intelligence Agency, supra* at 351–52. Mere recitation of the statutory standards or vague and sweeping claims will not suffice. *Hayden, supra* at 1387; *Founding Church of Scientology, supra* at 830; *Goland, supra* at 351.

The court has already found that, with respect to the ten specific types of deleted material enumerated above, the agency has justified, in sufficiently detailed fashion, its claim of exemption under exemption 1. Thus, for those enumerated justifications, the agency has complied with the first of the four *Goland* criteria.

As to the other three conditions, the court, with certain exceptions noted below, finds sufficient the method adopted by the CIA in its index of keying specific deletions from each of the documents to the categories of deletions justified in the Stein affidavit. This method is sufficiently detailed as to each document because it indicates, on a deletion--by--deletion—rather than a document--by--document—basis the nature of the information from each document that has been withheld. Since nondisclosure of each category of deleted information has been justified in the Stein affidavit, the result is a description of how disclosure of each deletion would have untoward national security results, in a way that avoids the risk of overbroad exemption. *Cf. Lamont v. Department of Justice*, 475 F.Supp. 761 (S.D.N.Y.1979).

Of course, the adequacy of this procedure does not make valid the justifications which the court has rejected. Most importantly, as to the exemption 1 and 3 claims based on the "intelligence sources and methods" language of section 403(d)(3) of the National Security Act of 1947 and section 1–301(c) of

the EO, the Agency has not made a sufficient showing. The affidavit must provide additional information from which the court can conclude that release of the withheld material can reasonably be expected to lead to disclosure of intelligence sources and methods. *See, e. g., Founding Church of Scientology, supra* at 831; *Phillippi v. Central Intelligence Agency, supra* at 1015 n. 14; *National Commission on Law Enforcement v. Central Intelligence Agency,* 576 F.2d 1373, 1377 (9th Cir. 1978).

It is impossible for the court to offer further guidance at this stage as to what would constitute a sufficient showing. The court therefore merely refers defendant to the fourth *Goland* criterion listed above. If defendant determines that it cannot offer further public explanation of such claims without risking disclosure of the withheld information, it may submit an affidavit for in camera inspection by the court. The court can then release any information in the affidavit which it finds to be nonsensitive. *Hayden, supra* at 1385; *Founding Church of Scientology, supra* at 833; *Ray, supra* at 1218 n. 81; *Phillippi, supra* at 1013.

In addition to its exemption 1 and 3 claims, defendant has withheld certain documents which were prepared in response to specific questions from the Church Committee as congressional records not subject to FOIA requests under 5 U.S.C. § 551(1)(A), or alternatively under exemption 5. 5 U.S.C. § 552(b)(5). The latter provision exempts "inter–agency or intra–agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

Plaintiff argues that the documents are not congressional materials and therefore not exempt from FOIA, nor are they "inter–agency memorandums," since the term "agency" is expressly defined to exclude Congress. 5 U.S.C. § 551(1)(A).

▇ The justification for exemption 5 fails because Congress is not an "agency." Insofar as "intra–agency" action is concerned, Congress still controls the documents.

The court in *Goland v. Central Intelligence Agency, supra* at 347, set forth three factors to be considered when an agency withholds a congressionally generated document in its possession: (1) the congressional prerogative to prevent disclosure of its own confidential materials; (2) the danger of inhibiting legislative and judicial branches from making documents available to the executive; and (3) Congress' interest in exchanging documents with agencies as part of its oversight authority. *Goland, supra* at 346, 347 n. 48.

Clearly, the documents at issue here were generated by the Agency, not Congress. But they were generated in direct response to the specific request of the Church Committee as part of its exercise of congressional oversight authority. Moreover, the Committee has expressed its wish that no material prepared for it in response to its express interests or resulting from its specific requests be released unless disclosure is approved by vote of the Committee.

Such a clear indication of congressional intention to retain control over the documents, coupled with the proper judicial deference to the congressional oversight process mandated by *Goland* convinces the court that the documents at issue should be deemed exempt from disclosure under the *Goland* rule.

Of course, portions of documents not generated at the direction of the Church Committee which contain information also appearing in the documents that were so generated are not exempt under the *Goland* rationale.

For the reasons discussed above, summary judgment is granted to defendant with respect to all deletions in the index under categories A, B, C, D, G and H as enumerated in the Deletion Category List.

Summary judgment is denied with respect to all deletions under categories E, F and I, without prejudice to a renewal on sufficient showing of exemption. Such renewal to be returnable no later than October 20, 1980.

So ordered.