**Stephen HRONES, Plaintiff-Appellant,**

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant-Appellee.**

**No. 81–1912.**

United States Court of Appeals, First Circuit.

Argued May 6, 1982.

Decided Aug. 10, 1982.

---

Daniel Burnstein, Boston, Mass., with whom Ann M. Hansen, Boston, Mass., and Alyssa Talanker, Providence, R.I., were on brief, for plaintiff-appellant.

Thomas H. Peebles, Atty., U.S. Dept. of Justice, Civil Division, Washington, D.C., with whom William F. Weld, U.S. Atty., Boston, Mass., J. Paul McGrath, Asst. Atty. Gen., Emile L. Julian, Asst. Gen. Counsel, C. I. A., and Vincent M. Garvey, Atty., U.S. Dept. of Justice, Civil Division, Washington, D.C., were on brief, for defendant-appellee.

Before PHILLIPS,* Senior Circuit Judge, BOWNES and BREYER, Circuit Judges.

PHILLIPS, Senior Circuit Judge.

This is an appeal from an order by United States District Judge Walter J. Skinner granting the summary judgment motion of

* Of the Sixth Circuit, sitting by designation.

defendant Central Intelligence Agency (CIA). In his October 30, 1981, order, Judge Skinner upheld the CIA's decision to withhold portions of certain documents within its possession pursuant to exemptions of the Freedom of Information Act (FOIA), 5 U.S.C. § 552. We affirm.

I

Appellant Stephen Hrones represented U. S. Military personnel as a civilian attorney before military tribunals in West Germany from 1970 to 1972. He commenced this action under the FOIA and the Privacy Act, 5 U.S.C. § 552a, by submitting a request to the CIA for access to "all records stored under my name or returnable by a search for documents containing my name." In response, the CIA informed appellant that 24 such documents had been located, but that the documents would not be released because of the applicability of various exemptions of the FOIA.[1] Appellant filed an administrative appeal of the CIA's decision. The CIA did not notify appellant of its determination with respect to his appeal within 20 days as required by 5 U.S.C. § 552(a)(6)(A)(ii). Therefore, appellant concluded that his administrative remedies had been exhausted, and he brought the present action in the United States District Court for the District of Massachusetts on July 30, 1976.

On October 26, 1976, the CIA informed appellant that it had completed its processing of his request and released portions of three of the documents. The remainder of the documents were withheld pursuant to Exemptions 1, 2, 3 and 6 of the FOIA. Appellant asserts that most of the portions released were meaningless, cryptic or total-

ly blank. The CIA also informed the appellant that five of the responsive documents had originated with the FBI and had been referred to that agency for processing.

On February 17, 1977, after the parties had filed several motions and memoranda with the district court, the CIA informed the appellant that it had discovered, during the course of its administrative processing, 34 documents responsive to the original request of appellant which had originated with the Department of the Army.[2] The CIA further informed the appellant that the documents had been referred to the Army for review on January 28, 1977, and that the Army had determined that the documents fell under Exemption 1 of the FOIA and could not be released.

On February 28, 1977, the CIA filed a motion to dismiss, or in the alternative, for summary judgment. Three affidavits accompanied the motion. Two of the affidavits were by two CIA officials explaining their reasons for withholding the CIA documents, and one was by an official of the Army, explaining the Army's reasons for withholding the Army documents.

Appellant filed a memorandum in opposition to the CIA's motion and attached an affidavit with documents released to him by the FBI in October 1976. Appellant asserted that the FBI documents appeared to have originated with the CIA, but were more complete than those documents released by the CIA. He asserted that the material released by the FBI—and apparently withheld by the CIA—was innocuous and in no way was a threat to national security as the CIA had asserted.

In March 1980, one month before oral argument on the summary judgment mo-

---

**1.** The number of documents later was determined to be 23; a single document had been counted as two.

**2.** Appellant contends that CIA documents 6–22 are the same as Army documents 1–34. It appears that he is mistaken. CIA documents 6–22 *transmitted* the Army documents, but they are not the same documents. (See Second Supplemental Affidavit of Gerald Liebenau, CIA Information Review Officer for the Directorate of Operations, at pages 7 and 8.)

In his first order, the district judge appeared to have been operating under the same misconception as appellant. In his July 3, 1980, order, Judge Skinner indicated that 17 of the CIA documents came from the Army. The record shows that 17 of the CIA documents transmitted the 34 Army documents. The number of Army documents transmitted by a single dispatching document varied from one to five.

tion was scheduled, the CIA filed a Supplemental Memorandum of Points and Authorities to support its February 1977 motion. In the memorandum, the CIA sought to demonstrate that the documents had been classified properly under new Executive Order 12065, 3 C.F.R. 375, which had replaced the Executive Order in effect when the CIA had filed its original motion. To this Supplemental Memorandum the CIA attached two new affidavits, one by a CIA official and one by an Army officer. Both affidavits explained, in terms which were largely conclusory, the bases for withholding the documents and the contents of the documents. To the affidavit from the CIA official were attached redacted copies of CIA documents which had not been withheld in their entirety.

After hearing the oral argument, the district court ordered that the CIA submit its documents for an *in camera* inspection. This order was entered July 3, 1980. The court found that the affidavits were not detailed sufficiently to justify granting the motion for summary judgment. Judge Skinner stated: "While superficially detailed, these analyses merely point out where a source is identified, a method is described, or an individual named. None of the surrounding information is divulged, and I am left with very little upon which to base a decision."

On September 10, 1980, two months later, the CIA responded to the order of the court. The CIA sent the documents to the United States Attorney for the District of Massachusetts, but in an effort to dissuade the district judge from viewing the documents *in camera*, the CIA submitted three additional public affidavits and two classified affidavits. These affidavits were more detailed than the others submitted by the CIA and the Army. The CIA also filed another "Supplemental Memorandum" in which it asserted that, while it would turn over the documents on request for *in camera* inspection, the court would be justified in granting summary judgment on the basis of these new affidavits.

After reading the public affidavits and the Supplemental Memorandum, the district judge agreed with the CIA and reversed his previous order. He granted the CIA's motion for summary judgment without viewing the documents *in camera*, without reading the classified affidavits, and without requesting further response from the plaintiff-appellant. In granting the motion for summary judgment Judge Skinner stated:

Since my order of July 3, 1980, the government has provided three supplemental affidavits of Gerald L. Liebenau, Major General Edmund R. Thompson and David E. Mark. While it is clear that the withheld documents contain peripheral and trivial information of absolutely no consequence concerning Mr. Hrones, the source of this information was an intelligence network of a foreign country. The United States receives this information under an assurance of confidentiality and protection of sources. I am satisfied by the affidavits that breach of this assurance, no matter how slight, would imperil valuable intelligence sources which are entitled to protection, and that the documents involved are exempt under the statutes referred to in my previous memorandum. The supplementary affidavits are sufficiently detailed in my opinion to avoid the necessity of *in camera* inspection of the withheld documents.

Appellant thereupon filed this appeal seeking a remand to the district court for an *in camera* review.

## II

Exemption 1 to disclosure under the FOIA, 5 U.S.C. § 552(b)(1), provides that an agency may withhold documents from disclosure which are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order...." The Executive Order asserted by the CIA to be applicable in this case is Executive Order 12065. To be classified properly under that order the unauthorized disclosure of the information

must be "expected to cause at least identifiable damage to the national security." The order specifies seven enumerated categories of information which may be so classified. The applicable classification in the present case is "intelligence activities, sources or methods." Most of the CIA documents and all of the Army documents were claimed to be exempt from disclosure under this exception.

Exemption 3 to disclosure under the FOIA, 5 U.S.C. § 552(b)(3), provides that an agency may withhold documents from disclosure which are "specifically exempted from disclosure by statute .... provided that such statute (A) requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld ..." CIA also relies upon this exception for refusing to disclose most of the documents in question to appellant. The two exempting statutes invoked by the CIA under this exemption are 50 U.S.C. §§ 403(d) & 403g.[3]

Since, in this case, exemption under either exemption 1 or 3 would be based upon the potential disclosure of intelligence activities, sources or methods, the standards for review of the decisions of the agencies in substance are essentially the same under either exemption. *But see Goland v. CIA,*

607 F.2d 339, 349 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (affirming under Exemption 3 district judge's decision based upon Exemption 1).[4]

Appellant argues that the district court abused its discretion in granting summary judgment for the CIA without first conducting an *in camera* inspection of the documents which were withheld pursuant to the disclosure 'exemptions under 5 U.S.C. § 552(b)(1) & (3). He proposes four bases in support of his contention that the district court abused its discretion: (1) alleged contradictions in the record concerning the bases upon which the CIA and the Army refused to release the documents; (2) evidence that the CIA allegedly acted in bad faith in this litigation; (3) alleged failure of the CIA and the Army to comply with the procedural requirements of the FOIA and the applicable Executive Orders; and (4) the "highly questionable legality of the CIA's CHAOS operations", a CIA investigation alleged by appellant to be the objective pursued by the CIA in collecting information about appellant. Upon these four grounds, appellant contends that there is reason to believe that the assertions by the CIA and the Army, and their officers' affidavits, are false and they have relied improperly on the FOIA exemptions "to shield

---

3. 50 U.S.C. § 403(d) provides in pertinent part:

For the purpose of coordinating the intelligence activities of the several Government departments and agencies in the interest of national security, it shall be the duty of the [Central Intelligence] Agency, under the direction of the National Security Council—

\* \* \* \* \* \*

(3) to correlate and evaluate intelligence relating to the national security, and provide for the appropriate dissemination of such intelligence within the Government using where appropriate existing agencies and facilities: Provided, that the Agency shall have no police, subpoena, law-enforcement powers, or internal-security functions: Provided further, That the departments and other agencies of the Government shall continue to collect, evaluate, correlate, and disseminate departmental intelligence: And provided further, That the Director of Central Intelligence shall be responsible for protecting intelli-

gence sources and methods from unauthorized disclosure...

50 U.S.C. § 403g provides in pertinent part:
In the interests of the security of the foreign intelligence activities of the United States and in order further to implement the proviso of section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from the provisions of section 654 of Title 5, and the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency...

4. An additional procedural showing is required under Exemption 1, however, in that the agency must demonstrate that the documents are "properly classified", i.e., that proper procedures were followed.

[the CIA's] CHAOS program from any further public exposure and embarrassment."

## III

■ As this court recognized in *Bell v. United States*, 563 F.2d 484, 487 (1st Cir. 1977), "[w]hile it is clear that the FOIA now authorizes *in camera* review of documents claimed to be exempt on national security grounds, in effect overruling *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), it is also clear that such inspection is not mandated." It is well within the discretion of a district judge to uphold an agency's decision to withhold documents on national security grounds without conducting an *in camera* inspection if the agency submits affidavits which demonstrate by sufficient description that the documents fall within the proper exemption. *Bell, supra,* 563 F.2d at 487.

We conclude that the affidavits submitted by the Army and the CIA in their September 10, 1980, submission to the district court are sufficiently detailed to justify the grant of summary judgment by the district judge. Although the earlier affidavits submitted by the agencies may not have satisfied the agencies' burden to prove their claims of exemption, the later affidavits demonstrate that release of the documents likely would result in the disclosure of the identities of CIA foreign informants and confidential information supplied to the Army by foreign governments.

Appellant apparently does not challenge the sufficiency of the affidavits as applied to exemptions 1 and 3. Instead he relies upon his four assertions set forth above in an effort to place his case within an exception to the rule that a court should accord "substantial weight" to agency affidavits in these matters. *See Bell v. United States, supra,* 563 F.2d at 487. Appellant asserts that deference should not be given to the affidavits in the present case because the record indicates that the agency has been acting in bad faith. *See Brown v. FBI*, 658 F.2d 71, 74 (2d Cir. 1981); *Halperin v. CIA*, 629 F.2d 144, 149–50 (D.C.Cir.1980); *Bell v. United States, supra,* 563 F.2d at 487.

We conclude that the allegations of appellant of contradictions in the record, failure of the CIA and Army to follow procedural requirements under the FOIA and Executive Order 12065, and bad faith in this litigation on the part of the CIA are without merit.

The primary basis for appellant's assertion that there are "contradictions" in the record is that the CIA's reasons for withholding certain documents differ from the reasons of the Army for withholding the same documents. This assertion is based upon the erroneous assumption by appellant that CIA documents 6–22 are the same as Army documents 1–34. *See n.2.* Another asserted "contradiction" is that five documents received by the appellant pursuant to an FOIA request to the FBI appear to have originated with the CIA. Appellant charges that these documents contain "innocuous" information and raise the inference that the CIA has overclassified them, because the FBI documents demonstrate that appellant "was not involved in any national security matter." This is not necessarily evidence of "contradiction" in the record. The CIA's assertion is not that it was investigating the activities of appellant, but that the appellant associated with the subjects of investigations from time to time. The CIA contends that it withheld the documents because it feared that disclosure would result in identifying CIA foreign informants.

■ Appellant's contention that the CIA and the Army failed to follow proper procedures in classifying the documents similarly is without merit. Although the affiants stated that the documents had been properly classified, the appellant claims that procedural irregularities can be inferred because the affidavits do not, for example, "indicate the presence of any marking on the documents showing the date or event of declassification or review." Thus, it appears that any charges of procedural irregularities are wholly speculative. All of the evidence in the record indicates that proper procedures were followed. Further, as appellant admits, a procedural defect in com-

**19**

plying with the applicable Executive Order would not, in and of itself, justify the release of the documents. *See, e.g., Lesar v. United States Department of Justice*, 636 F.2d 472, 485 (D.C.Cir.1980).

█ Appellant's claim that the CIA has acted in bad faith in this litigation is based upon the filing by the agency of its September 10, 1980, memorandum in which it sought to dissuade the district judge from inspecting the documents *in camera*. The efforts by the CIA to avoid *in camera* inspection in no way amount to bad faith. It delivered the documents to the United States Attorney for the District of Massachusetts so that they would be available if the district judge rejected the CIA's position. Even if this last-ditch effort to avoid *in camera* inspection is considered a product of zealous advocacy, in no way is it evidence of bad faith.

█ Finally, to the extent that the claims of appellant are based upon the "highly questionable legality of the CIA's CHAOS operations", he has chosen the wrong procedure for review of the legality of the operations of the agency. Such an investigation is not within the scope of court review of the denial of an FOIA request.

### IV

As to the few document segments withheld by the CIA under the FOIA exemption 6, 5 U.S.C. § 552(b)(6) (unwarranted invasion of personal privacy of another), appellant argues that the district court failed to balance the public interest in disclosure of these documents against the privacy interests of persons other than the appellant who are mentioned in the documents.

Exemption 6 of the FOIA provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

█ We agree with appellant that in deciding claims under Exemption 6, interest of the individual in privacy must be weighed against the public interest in disclosure and that the balance favors disclosure. *Kurzon v. Department of Health & Human Services*, 649 F.2d 65, 67 (1st Cir. 1981). We do not agree, however, that the district judge abused his discretion in upholding the decision of the agency to withhold a few portions of the documents in question under this exception.

The summary judgment of the district court is affirmed. No costs are taxed. The parties will bear their own costs on this appeal.