F e b r u a r y 1 1 , 1 9 9 3
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-1334

BEATRICE MAYNARD,

Plaintiff, Appellee,

v.

CENTRAL INTELLIGENCE AGENCY,

Defendant, Appellant.

No. 92-1615

BEATRICE MAYNARD,

Plaintiff, Appellant,

v.

CENTRAL INTELLIGENCE AGENCY, ET AL.,

Defendants, Appellees.

ERRATA SHEET

The opinion of this Court issued on February 4, 1993, is
amended as follows:

On page 3, line 7, delete "lower court's".

On page 3, after "it." on line 3 of second paragraph, add
footnote 3 as follows: For the record, that order was not issued
by the Judge from whose final orders the appeal is taken."

On page 34, line 17, replace "appropriate" with
"inappropriate".

February 11, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-1334

BEATRICE MAYNARD,

Plaintiff, Appellee,

v.

CENTRAL INTELLIGENCE AGENCY,

Defendant, Appellant.

No. 92-1615

BEATRICE MAYNARD,

Plaintiff, Appellant,

v.

CENTRAL INTELLIGENCE AGENCY, ET AL.,

Defendants, Appellees.

ERRATA SHEET

The opinion of this Court issued on February 4, 1993, is
amended as follows:

On page 47, last line, replace "Costs to appellees." with

"Costs to appellees in No. 92-1615 and to appellant in No. 91-

1334."

February 5, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-1334
BEATRICE MAYNARD,

Plaintiff, Appellee,
v.

CENTRAL INTELLIGENCE AGENCY,
Defendant, Appellant.

No. 92-1615

BEATRICE MAYNARD,
Plaintiff, Appellant,

v.
CENTRAL INTELLIGENCE AGENCY, ET AL.,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before
Breyer, Chief Judge,

Campbell, Senior Circuit Judge,

and Torruella, Circuit Judge.

Steven J. Lyman with whom Law Office of Carl D. McCue was on

brief for plaintiff.
John P. Schnitker, Appellate Staff, Civil Division, Department of

Justice, with whom Stuart M. Gerson, Assistant Attorney General,

Richard S. Cohen, United States Attorney, and Leonard Schaitman,

Appellate Staff, Civil Division, Department of Justice, were on briefs
for defendants.

February 4, 1993

CAMPBELL, Senior Circuit Judge. Plaintiff Beatrice

Maynard brought this action in the district court to compel

disclosure under the Freedom of Information Act ("FOIA"), 5

U.S.C. 552, of certain government documents and parts of

documents pertaining to the disappearance of her former

husband, Robert Thompson, during a flight over Cuba in

December of 1961. Maynard had sought information about this

from various agencies, including the Central Intelligence

Agency ("CIA"), the Federal Bureau of Investigation ("FBI"),

the Defense Intelligence Agency ("DIA"), the State

Department, the Immigration and Naturalization Service

("INS"), the United States Customs Service ("Customs

Service"), the Federal Aviation Administration ("FAA"), the

National Personnel Records Center ("NPRC"), and the Navy

Department.1 While certain records and other materials were

provided to her, Maynard felt that she was entitled to more,

and so brought this suit.

After reviewing several documents in camera, the

district court ordered disclosure of two items of information

one name and one paragraph that the government had

expressly redacted from materials it had furnished to

plaintiff. The CIA appeals from the court's direction to

reveal the paragraph, arguing that the paragraph was properly

1. The district court granted the parties' stipulated
dismissal of the FAA, the NPRC, and the Navy in February
1990.

-4-

withheld under FOIA's Exemptions 1 and 3, 5 U.S.C.

552(b)(1), (3).2 In all other respects, the district court

granted summary judgment in favor of the defendant agencies,

denying plaintiff's requests for further information, for

further document searches, and for attorney's fees.

Plaintiff now appeals from these judgments.

Finding that Exemptions 1 and 3 authorize the CIA's

withholding of the redacted paragraph, we reverse the order

requiring the CIA to disclose it3. We affirm the district

court's grant of summary judgment for the defendant agencies.

I.

1. The CIA's Appeal

On January 22, 1987, plaintiff submitted FOIA

requests to the defendant agencies, seeking any information

2. FOIA Exemption 1 provides that the FOIA's disclosure
requirements do not apply to matters that are "(1)(A)
specifically authorized under criteria established by an
Executive order to be kept secret in the interest of national
defense or foreign policy and (B) are in fact properly
classified pursuant to such Executive order." 5 U.S.C.
552(b)(1). The information at issue here was classified
pursuant to Executive Order 12356, 47 Fed. Reg. 14874 (1982).
FOIA Exemption 3 pertains to matters that are exempted
from disclosure by a statute that either "(A) requires that
the matters be withheld from the public in such a manner as
to leave no discretion on the issue, or (B) establishes
particular criteria for withholding or refers to particular
types of matters to be withheld." 5 U.S.C. 552(b)(3). The
exempting statute here is 50 U.S.C. 403(d)(3), which
provides that "the Director of Central Intelligence shall be
responsible for protecting intelligence sources and methods
from unauthorized disclosure."

3. For the record, that order was not issued by the Judge
from whose final orders the appeal is taken.

-5-

they might have concerning her former husband, Robert

Thompson. She said he disappeared along with Robert Swanner

on a flight over Cuba, in December of 1961. Thompson

apparently was involved in the distribution of anti-Castro

leaflets; plaintiff believed him to have worked for the CIA.

Among documents produced by the FBI in response to

plaintiff's requests was a redacted memo dated December 22,

1961. The FBI informed plaintiff that the excised

information had originated with the CIA and was being

withheld under FOIA Exemptions 1 and 3 at the CIA's request.

Plaintiff brought this action in the district court in

February 1988, seeking more complete disclosure, including

disclosure of the withheld paragraph.

After the agency defendants moved for summary

judgment, the district court in March of 1990 ordered the

government to submit for the court's in camera inspection all

withheld and redacted documents in their complete form. The

government did so on May 1, 1990. Among the documents

submitted were thirty-two pages the FBI had located in its

search for documents responsive to plaintiff's FOIA

request.4 This material included the redacted memo of

4. The State Department also submitted for in camera review

a document on which the State Department had redacted certain
identifying information, such as the names of individuals,
for personal privacy concerns pursuant to FOIA Exemption 6.

-6-

December 22, 1961 that has since become the subject of the

CIA's appeal.

To help explain its position, the CIA submitted to

the district court the public declaration of Katherine M.

Stricker, an Information Review Officer for the CIA's

Directorate of Operations. With respect to Exemption 1,

which exempts national security information classified

pursuant to an Executive Order, Stricker explained that she

had personally reviewed the classification determinations

under the standards of Executive Order 12356. Based on that

review, Stricker determined that the withheld information

would "reveal the identity of an intelligence source or

disclose an intelligence method," the unauthorized disclosure

of which, "either by itself or in the context of other

information, reasonably could be expected to cause damage to

the national security." See Executive Order 12356,

1.3(a)(4), (c), 47 Fed. Reg. 14874, 14876. Accordingly, she

said, the information was properly classified at the "SECRET

level" and was exempt from disclosure under FOIA Exemption 1.

With respect to Exemption 3, which protects

information exempted from disclosure by statute, Stricker

explained that, similar to Executive Order 12356, the

National Security Act, 50 U.S.C. 403(d)(3), requires the

Director of the CIA to protect intelligence sources and

methods from unauthorized disclosure. Stricker concluded

-7-

that the redacted information fell within the ambit of the

statute because it identified the use of particular

intelligence methods used during specific time periods.

According to Stricker, the release of such information would

allow hostile intelligence organizations to neutralize the

use of those methods, thereby causing a concomitant loss of

intelligence.

On November 14, 1990, the district court ordered

the government to give to plaintiff information from three of

the documents subject to in camera review. This included the

information at issue here the third full paragraph on page

2 of the December 22, 1961 memo.5 The CIA moved for

reconsideration of the portion of the court's order regarding

the redacted paragraph and submitted an in camera declaration

by Stricker, which explained in further detail the nature of

the information withheld. On February 1, 1991, the district

court granted the CIA's motion for reconsideration, but on

reconsideration, the court affirmed its earlier ruling,

finding that "the movant's assertion that disclosure will

5. The district court's order of November 14, 1990, also
required disclosure of material contained in two other
documents: (1) a single name (E.L. Johnson) contained in an
FBI document dated November 20, 1961; and (2) the third full
paragraph of an FBI memorandum dated July 5, 1962. The FBI
requested the district court to reconsider the portion of the
order regarding the July 5, 1962 memorandum, arguing that the
material was exempt from disclosure under FOIA Exemption 7(D)
as information obtained from a confidential source. The
district court granted the FBI's motion for reconsideration
and vacated that portion of its order on February 1, 1991.

-8-

'reveal its sources and methods' in a matter now

approximately thirty years old is without substance and is,

indeed, the height of bureaucratic disingenuousness." The

CIA appeals from this order.

-9-

A. FOIA Exemption 3

The FOIA gives members of the public access to

documents held in government files. Every federal agency

"upon any request for records which . . . reasonably

describes such records" must make the records "promptly

available to any person." 5 U.S.C. 552(a)(3). Nine

categories of documents are exempted from this broad

disclosure requirement.

Exemption 3 permits a federal agency to

withhold matters that are:

(3) specifically exempted from disclosure
by statute . . . provided that such
statute (A) requires that the matters be
withheld from the public in such a manner
as to leave no discretion on the issue,
or (B) establishes particular criteria
for withholding or refers to particular
types of matters to be withheld.

5 U.S.C. 552(b)(3). Two questions need to be answered in

determining whether Exemption 3 applies in a particular

situation. CIA v. Sims, 471 U.S. 159, 167 (1985). First,

does the statute constitute a "statutory exemption to

disclosure within the meaning of Exemption 3"? Second, is

the requested information "included within" the statute's

"protection"? Id.

The first question has already been answered

affirmatively for present purposes. In Sims, the Supreme

Court held that 50 U.S.C. 403(d)(3), which provides that

"the Director of Central Intelligence shall be responsible

-10-

for protecting intelligence sources and methods from

unauthorized disclosure," is an Exemption 3 statute because

it specifies the types of material to be withheld under

subpart (B) of the Exemption. 471 U.S. at 167-68; accord

Knight v. CIA, 872 F.2d 660, 663 (5th Cir. 1989), cert.

denied, 494 U.S. 1004 (1990); Miller v. Casey, 730 F.2d 773,

777 (D.C. Cir. 1984).

In answering the second question whether the

requested information is included within the statute's

"protection" this court has stated that,

once a court determines that the statute
in question is an Exemption 3 statute,
and that the information requested at
least arguably falls within the statute,
FOIA de novo review normally ends.

Aronson v. IRS, 973 F.2d 962, 965, 967 (1st Cir. 1992).

The Supreme Court has said,

it is the responsibility of the Director
of Central Intelligence, not that of the
judiciary, to weigh the variety of
complex and subtle factors in determining
whether disclosure of information may
lead to an unacceptable risk of
compromising the Agency's intelligence-
gathering process.

Sims, 471 U.S. at 180. In the intelligence area, the Court

has commented that judges "have little or no background in

the delicate business of intelligence gathering" and may be

unable to comprehend the significance of material that

appears to be innocuous, but in fact can reveal a significant

intelligence source or method. Id. at 176. Therefore, in

-11-

determining whether withheld material relates to intelligence

sources or methods, a court must "accord substantial weight

and due consideration to the CIA's affidavits." E.g.,

Fitzgibbon v. CIA, 911 F.2d 755, 762 (D.C. Cir. 1990); see

Sims 471 U.S. at 170 ("Congress intended to give the Director

of Central Intelligence broad power to protect the secrecy

and integrity of the intelligence process").

We have examined the unredacted version of the

December 22, 1961 memorandum. In our opinion, it is at very

least "arguable" that the requested paragraph falls within 50

U.S.C. 403(d)(3) for the reason the CIA gave, to wit, that

it could reveal intelligence methods. See Sims, 471 U.S. at

180-81; Aronson, 973 F.2d at 967. Giving due deference to

the agency's determination, we hold that the paragraph is

exempt from disclosure under FOIA Exemption 3 and 50 U.S.C.

-12-

403(d)(3). The district court erred in ruling otherwise.6

B. FOIA Exemption 1

While our decision under Exemption 3 ends the

matter, we note that FOIA Exemption 1 leads to the same

result. Exemption 1 permits the withholding of matters that

are:

(1)(A) specifically authorized under
criteria established by an Executive
order to be kept secret in the interest
of national defense or foreign policy and
(B) are in fact properly classified
pursuant to such Executive order.

5 U.S.C. 552(b)(1). Executive Order 12356, upon which the

CIA relies, specifically authorizes the withholding of

information concerning "intelligence sources and methods,"

6. We do not agree with the district court that merely
because the information here is thirty years old, it cannot
detrimentally reveal intelligence sources or methods.
Plaintiff conceded at oral argument before this court that if
the withheld information relates to intelligence sources or
methods, the passage of thirty years, by itself, is
insufficient to require an agency to disclose the
information. Courts have generally rejected the contention
that the mere age of intelligence information rules out
Exemption 3. Fitzgibbon, 911 F.2d at 763-64. Reluctance

stems from recognition that it is virtually impossible for an
outsider to ascertain what effect the passage of time may or
may not have had to mitigate the harm from disclosure of
sources and methods. Such is true, certainly, as to events
that have occurred well within the careers of living persons
including governmental leaders (like Cuba's leader) still in
power. The CIA, not the judiciary, is better able to weigh
the risks that disclosure of such information may reveal
intelligence sources and methods so as to endanger national
security. Courts have accordingly upheld pursuant to
Exemption 3 and 50 U.S.C. 403(d)(3) the withholding of
information as old as that sought by plaintiff here. Sims,

471 U.S. at 180 (approximately thirty-year-old information);
Fitzgibbon 911 F.2d at 763-64 (same).

-13-

1.3(a)(4), 47 Fed. Reg. 14874, 14876, and declares that

unauthorized disclosure of "intelligence sources and methods"

is "presumed to cause damage to the national security,"

1.3(c), 47 Fed. Reg. at 14876.

When, as here, Exemptions 1 and 3 are claimed on

the basis of potential disclosure of intelligence sources or

methods, the standard of reviewing an agency's decision to

withhold information is essentially the same.7 Hrones v.

CIA, 685 F.2d 13, 17 (1st Cir. 1982); Military Audit Project

v. Casey, 656 F.2d 724, 736-37 n.39 (D.C. Cir. 1981)

(Exemption 3 and 1 provide overlapping protection in cases

involving intelligence sources and methods); see Sims, 471

U.S. at 190 n.6 (Marshall, J., concurring) (current Executive

Order 12356 moves Exemption 1 closer to Exemption 3 than its

predecessor Executive Order 12065). Courts, therefore,

accord substantial deference to the CIA's determination that

information must be withheld under Exemption 1, and will

uphold the agency's decision so long as the withheld

information "logically falls into the category of the

exemption indicated," and there is no evidence of bad faith

7. Although the standards are substantially identical,
courts, in reviewing Exemption 1 claims, state that their
review is de novo. E.g., Goldberg v. United States Dept. of

State, 818 F.2d 71, 77 (D.C. Cir. 1987), cert. denied, 485

U.S. 904 (1988). In carrying out this de novo review, courts

"accord substantial weight to an agency's affidavit
concerning the details of the classified status of the
disputed record." S. Conf. Rep. No. 1200, 93d Cong., 2d
Sess. 12 (1974), reprinted in 1974 U.S.C.C.A.N. 6290.

-14-

on the part of the agency. E.g., Bell v. United States, 563

F.2d 484, 487 (1st Cir. 1977); King v. United States Dep. of

Justice, 830 F.2d 210, 217 (D.C. Cir. 1987). As already

stated, the information withheld by the CIA in this case

"arguably" or "logically" pertains to intelligence methods.

There is no evidence of bad faith on the part of the

agency.8 The redacted paragraph is, therefore, exempt from

disclosure under FOIA Exemption 1 as well as under Exemption

3.9

8. Plaintiff contends that the district court improperly
denied discovery, which could have revealed agency bad faith.
To support this argument, plaintiff cites Weisberg v. United

States Dept. of Justice, 627 F.2d 365, 370-71 (D.C. Cir.

1980), in which the D.C. Circuit noted that discovery may be
appropriate when the adequacy of an agency's search is in
doubt. As discussed below, the agencies' affidavits
demonstrate that their searches here were adequate. See

Gillin v. IRS, No. 92-1803, slip. op. at 10 (1st Cir.

December 7, 1992) (citing Goland v. CIA, 607 F.2d 339, 355

(D.C. Cir. 1978)) (absent showing of bad faith sufficient to
impugn agency's affidavit demonstrating adequacy of search,
district court has discretion to forego discovery), cert.

denied, 445 U.S. 927 (1980). In any case, plaintiff's claims

that the district court abused its discretion by denying her
discovery are devoid of merit. See infra at 42-43. Thus,

Weisberg is inapposite.

9. As with Exemption 3, the passage of some thirty years
does not, by itself, invalidate the CIA's showing under
Exemption 1. Executive Order 12356 provides, without time
limit, that "[i]nformation shall be classified as long as
required by national security considerations." 1.4(a), 47
Fed. Reg. at 14877. Unlike its predecessor Executive Order
12065, Executive Order 12356 does not create a presumption
favoring disclosure of information once it reaches a certain
age. Courts have recognized that it would be extremely
difficult for the judiciary to set particular time
limitations upon Exemption 1, at least within time parameters
of the duration we are discussing here. Bonner v. United

States Dept. of State, 724 F. Supp. 1028, 1033 n.15 (D.D.C.

-15-

2. Plaintiff's Appeal

Plaintiff alleges numerous errors in the district

court's discovery orders, grants of summary judgment, and

denial of attorney's fees. Plaintiff complains specifically

of the following district court actions: 1) denying

plaintiff's request for Vaughn indices;10 2) ruling that

the defendant agencies had conducted adequate searches; 3)

ruling that the government had properly claimed exemptions

under the FOIA; 4) denying various discovery requests; and 5)

denying attorney's fees to plaintiff. We address each of

these claims of error and find that none has any merit.

A. Vaughn Index

1989), vacated on other grounds, 928 F.2d 1148 (D.C. Cir.

1991). In this case, after review of the paragraph in
question, Information Review Officer Stricker concluded that
the "classification [of this information] should be
maintained" in the interests of national security. We are
not in a position to "second-guess" the CIA's conclusion
regarding the need for continued classification of this
material. Branch v. FBI, 700 F. Supp. 47, 48-49 & n.4

(D.D.C. 1988); see Sims, 471 U.S. at 178 ("[w]hat may seem

trivial to the uninformed, may appear of great moment to one
who has a broad view of the scene and may put the questioned
item of information in its proper context.") (citations and
internal quotations omitted); Bell, 563 F.2d at 486-87

(upholding under Exemption 1 the withholding of approximately
thirty-year-old information). But see Wiener v. FBI, 943

F.2d 972, 981 n.15 (9th Cir. 1991) (asking under Executive
Order 12356 whether it is reasonable to expect disclosure of
a twenty-year-old investigation to reveal the existence of a
current intelligence investigation), cert. denied, 112 S. Ct.

3013 (1992).

10. The name of these indices is derived from the seminal
case, Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert.

denied, 415 U.S. 977 (1974).

-16-

Plaintiff contends that the district court erred in

denying plaintiff's motion to compel each defendant agency to

prepare a Vaughn index. A Vaughn index correlates

information that an agency decides to withhold with the

particular FOIA exemption or exemptions, explaining the

agency's justification for nondisclosure. E.g., Curran v.

Department of Justice, 813 F.2d 473, 475 n.4 (1st Cir. 1987);

Wightman v. Bureau of Alcohol, Tobacco & Firearms, 755 F.2d

979, 981 n.1 (1st Cir. 1985). An adequate Vaughn index

serves three functions:

it forces the government to analyze
carefully any material withheld, it
enables the trial court to fulfill its
duty of ruling on the applicability of
the exemption, and it enables the
adversary system to operate by giving the
requester as much information as
possible, on the basis of which he can
present his case to the trial court.

Keys v. United States Dept. of Justice, 830 F.2d 337, 349

(D.C. Cir. 1987) (quoting Lykins v. United States Dept. of

Justice, 725 F.2d 1455, 1463 (D.C. Cir. 1984)). We find no

merit in plaintiff's claim of improper denial of Vaughn

indices here.11 A Vaughn index was obviously not

11. Although plaintiff frames her claim as one of improper
denial of Vaughn indices, her brief suggests that plaintiff

also contests the adequacy of the Vaughn indices that were,

in fact, provided by certain of the defendant agencies.
Because a district court must have an adequate factual basis
for making determinations as to the applicability of claimed
FOIA exemptions, e.g., Bowers v. United States Dept. of

Justice, 930 F.2d 350, 353 (4th Cir.), cert. denied, 112 S.

Ct. 308 (1991); Ingle v. United States Dept. of Justice, 698

-17-

called for from the INS, the DIA or the Customs Service.

These agencies disclaimed possession of any documents

material to plaintiff's request. A Vaughn index could not

even have been prepared in such circumstances.

As for the CIA, the district court denied

plaintiff's motion for a Vaughn index, without prejudice,

because plaintiff had failed to supply the CIA with data

e.g., the city or county of Thompson's birth and a copy of

his birth certificate that the CIA said was necessary to

complete its search. Although plaintiff subsequently

furnished the CIA with the requested information, the record

nowhere indicates that plaintiff renewed her request for a

Vaughn index from the CIA.

The CIA did file, in connection with its summary

judgment motion, both public and in camera declarations,

asserting that particular information redacted or expressly

withheld was exempt from the FOIA under Exemptions 1 and 3

because it would reveal intelligence sources or methods. One

such declaration was that of Information Review Officer

Stricker. While this lacked specifics, a more detailed

affidavit could have revealed the very intelligence sources

or methods that the CIA wished to keep secret. See, e.g.,

F.2d 259, 263 (6th Cir. 1983), we address both the adequacy
of the agencies' Vaughn indices and the propriety of the

district court's decision with respect to plaintiff's initial
motion for Vaughn indices.

-18-

Doyle v. FBI, 722 F.2d 554, 556 (9th Cir. 1983) ("In certain

FOIA cases -- usually when national security exemptions are

claimed -- the government's public description of a document

and the reasons for exemption may reveal the very information

that the government claims is exempt from disclosure.");

Church of Scientology v. United States Dept. of Army, 611

F.2d 738, 742 (9th Cir. 1979) ("the government need not

specify its objections in such detail as to compromise the

secrecy of the information.").

When, as here, the agency, for good reason, does

not furnish publicly the kind of detail required for a

satisfactory Vaughn index, a district court may review

documents in camera. E.g., NLRB v. Robbins Tire & Rubber

Co., 437 U.S. 214, 224 (1978) ("[t]he in camera review

provision is discretionary by its terms, and is designed to

be invoked when the issue before the District Court could not

be otherwise resolved"); Church of Scientology, 611 F.2d at

742 (if court finds agency affidavits to be "too generalized

to establish eligibility for an exemption, it may, in its

discretion, proceed to examine the disputed documents in

camera for a first-hand determination of their exempt

status"). Discretionary in camera review enables the court

to "determine whether the failure of the affidavit stemmed

from mere inadvertence or from a truly overbroad reading of

the exemption by the agency." Irons v. Bell, 596 F.2d 468,

-19-

471 n.6 (1st Cir. 1979). The government, however, retains at

all times the burden of proving the exempt status of withheld

documents.12 E.g., Church of Scientology, 611 F.2d at 743.

In camera review is particularly appropriate when

the documents withheld are brief and limited in number. See,

e.g., Ingle v. Department of Justice, 698 F.2d 259, 264 (6th

Cir. 1983) ("full in camera reviews are appropriate in cases

involving a very limited number of relatively brief

documents"); Church of Scientology, 611 F.2d at 743 ("small

number of documents requested, and their relative brevity,

12. The 1974 amendments to the FOIA, P.L. 93-502, 88 Stat.
1561, 1562 (1974), expressly state that the government
retains the burden of proving a document's exempt status even
when a district court conducts in camera review:

[The district court] may examine the contents of such
agency records in camera to determine whether such
records or any part thereof shall be withheld under any
of the exemptions set forth in subsection (b) of this
section, and the burden is on the agency to sustain its
action.

5 U.S.C. 552(a)(4)(B). The legislative history of the 1974
amendments to the FOIA further clarifies the district court's
discretion in conducting in camera review and the

government's burden of proof:

While in camera examinations need not be automatic, in

many situations it will plainly be necessary and
appropriate. Before the court orders in camera

inspection, the Government should be given the
opportunity to establish by means of testimony or
detailed affidavits that the documents are clearly
exempt from disclosure. The burden remains on the
Government under this law.

S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974),
reprinted in 1974 U.S.C.C.A.N. 6267, 6287-88.

-20-

made these cases appropriate instances for exercise of the

district court's inspection prerogative."). On the other

hand, "where the documents in issue constitute hundreds or

even thousands of pages, it is unreasonable to expect a trial

judge to do as thorough job of illumination and

characterization as would a party interested in the case."

Vaughn v. Rosen, 484 F.2d 820, 825 (D.C. Cir. 1973), cert.

denied, 415 U.S. 977 (1974).

The district court here conducted an in camera

inspection of the relatively limited number of documents in

which the CIA claimed exemptions. This provided an adequate

factual basis for the district court's decision and obviated

the need for further Vaughn indices from the CIA. See, e.g.,

Irons, 596 F.2d at 471 (in camera inspection of documents

along with in camera testimony can fully establish

applicability of FOIA exemption); King, 830 F.2d at 228

(after holding that Vaughn index was inadequate, D.C. Circuit

suggests that district court on remand can review documents

in camera).

With respect to the State Department, the district

court denied plaintiff's request for a Vaughn index because

plaintiff did not contest the adequacy of the State

Department's claimed exemption. The State Department

reported that it had found four documents responsive to

plaintiff's request. It released three of these in their

-21-

entirety and the fourth with minor excisions to protect

personal privacy interests pursuant to FOIA Exemption 6. The

plaintiff did not challenge the excisions under Exemption 6,

rendering unwarranted a Vaughn index at that time. The State

Department subsequently submitted a declaration, explaining

that it had withheld names and other identifying information,

such as date and place of birth, address and occupation, of

persons other than plaintiff's deceased husband, because

"disclosure could subject these individuals or their families

to possible embarrassment or harassment." This declaration

fully met any requirement under Vaughn that the State

Department provide a reasoned justification for its

withholdings. Furthermore, the State Department submitted

the one redacted document to the district court for in camera

review.

Finally, in respect to the FBI, the district court

granted plaintiff's motion for a Vaughn index. The FBI

thereupon submitted two detailed declarations by David R.

Lieberman, a special agent in the Freedom of Information-

Privacy Acts Section of the FBI. Mr. Lieberman explained

that the FBI had released twenty-five of forty-four pages of

material to plaintiff, and justified, by means of coded

indices,13 the withholding of information in order to

13. In a "coded" format, an agency breaks down its FOIA
exemptions into subcategories, explains the nondisclosure
rationale for each subcategory, and then correlates the

-22-

protect the personal privacy of former FBI agents and third

parties (Exemption 7(C)) and to protect the identities of and

information provided by confidential sources (Exemption

7(D)). Furthermore, as with the CIA and the State

Department, the government submitted all of the FBI's

documents for in camera review. The Lieberman declarations

and coded indices, in conjunction with the district court's

in camera review of the documents, were adequate to meet any

requirements under Vaughn that the government provide a

reasoned justification for its withholdings. See, e.g.,

subcategories to each document or portion withheld. For
example, the Lieberman declaration was accompanied by copies
of the documents in their redacted form. Next to each
redaction was a code designation that corresponds to a FOIA
exemption and a subcategory of information. For instance,
one of the subcategories for information withheld under
Exemption 7(C) was names and initials of FBI agents and
support personnel. A coded symbol (b7C-1) would appear next
to any deletions that fit within this exemption and
subcategory of information. Use of coded indices has been
explicitly approved by several circuit courts as long as each
deletion is correlated "specifically and unambiguously to the
corresponding exemption," and the agency affidavit places
"each document into its historical and investigative
context." See, e.g., Keys v. United States Dept. of Justice,

830 F.2d 337, 349-50 (D.C. Cir. 1987). Use of coded indices
is fully consistent with the Supreme Court's endorsement of
"workable rules," under which general categories of
information may be withheld under certain FOIA exemptions
"without regard to individual circumstances." See United

States Dept. of Justice v. Reporters Committee for Freedom of

the Press, 489 U.S. 749, 779-80 (1989) (upholding use of

categorical rules in Exemption 7(C) context). We therefore
agree with these circuits that "it is the function, not the
form, of the index that is important," and that coded indices
can, in some instances, accomplish the functions of Vaughn

"more efficiently and clearly than would the classical Vaughn

indices." Keys, 830 F.2d at 349.

-23-

Lykins, 725 F.2d at 1464 (when "an agency has released most

of the contents of a document and has otherwise met its FOIA

obligations in good faith, a public statement that the

remaining small portions would reveal a confidential source -

- coupled with in camera review of the excised portions of

the document . . . is sufficient to meet Vaughn's

requirements.").

Plaintiff's claim of improper denial of Vaughn

indices is, therefore, groundless and unsupported.

C. The Adequacy of the Searches

Plaintiff next contends that the defendant agencies

did not conduct adequate searches for responsive documents.

Plaintiff directs most of her brief to this argument.

However, as with plaintiff's arguments regarding the

defendant agencies' Vaughn indices, plaintiff's contentions

with respect to the adequacy of the agencies' searches lack

merit and, in some instances, ignore agency affidavits that

cure deficiencies noted by the district court in earlier

affidavits.

The adequacy of an agency's search for documents

under the FOIA is judged by a standard of reasonableness and

depends upon the facts of each case. E.g., Weisberg v.

United States Dept. of Justice, 745 F.2d 1476, 1485 (D.C.

1984). The crucial issue is not whether relevant documents

might exist, but whether the agency's search was "reasonably

-24-

calculated to discover the requested documents." Safecard

Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991).

In order to establish the adequacy of its search,

the agency may rely upon affidavits provided they are

relatively detailed and nonconclusory, and are submitted by

responsible agency officials in good faith. E.g., Miller v.

United States Dept. of State, 779 F.2d 1378, 1383 (8th Cir.

1985); Weisberg, 745 F.2d at 1485. A satisfactory agency

affidavit should, at a minimum, describe in reasonable detail

the scope and method by which the search was conducted. See,

e.g., Oglesby, 920 F.2d at 68; Perry v. Block, 684 F.2d 121,

127 (D.C. Cir. 1982). The affidavit should additionally

"describe at least generally the structure of the agency's

file system which makes further search difficult." Church of

Scientology of Cal. v. I.R.S., 792 F.2d 146, 151 (D.C. Cir.

1986) (Scalia, J.).

If an agency fails to establish through reasonably

detailed affidavits that its search was reasonable, the FOIA

requester may avert summary judgment merely by showing that

the agency might have discovered a responsive document had

the agency conducted a reasonable search. E.g., Weisberg v.

United States Dept. of Justice, 705 F.2d 1344, 1351 (D.C.

Cir. 1983). However, if an agency demonstrates that it has

conducted a reasonably thorough search, the FOIA requester

-25-

can rebut the agency's affidavit only by showing that the

agency's search was not made in good faith. Miller, 779 F.2d

at 1383. An agency's affidavit is "accorded a presumption of

good faith, which cannot be rebutted by 'purely speculative

claims about the existence and discoverability of other

documents.'" Safecard Servs., 926 F.2d at 1200 (quoting

Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C.

Cir. 1981)).

Plaintiff complains, first, that the FBI, the

Customs Service, and the State Department failed to search

"alternate spellings" and "files containing the information

of cohorts." Plaintiff also charges that unspecified "clues"

contained in the four documents released to her by the State

Department "might have indicated" other potential

repositories of information that the State Department should

have searched. Plaintiff's FOIA request, however, was

limited to "information pertaining to Robert Thompson."14

Because the scope of a search is limited by a plaintiff's

FOIA request, there is no general requirement that an agency

search secondary references or variant spellings. See Gillin

v. IRS, No. 92-1803, slip op. at 6 (1st Cir. December 7,

1992) (quoting Meeropol v. Meese, 790 F.2d 942, 955 (D.C.

14. Plaintiff sent identical FOIA requests to each defendant
agency stating the following: "I am requesting, through the
FOIA, any information you may have concerning my former
husband, Robert Thompson. He disappeared along with Robert
Swanner on a flight over Cuba in December of 1961."

-26-

Cir. 1986)) ("The adequacy of an agency's search 'is measured

by the reasonableness of the effort in light of the specific

request.'"). Nor is there any requirement that an agency

conduct further searches on the basis of unspecified "clues"

in released documents.

Second, plaintiff complains that the declarations

submitted by the FBI and the CIA were not based on personal

knowledge. However, an agency need not submit an affidavit

from the employee who actually conducted the search.

Instead, an agency may rely on an affidavit of an agency

employee responsible for supervising the search. E.g.,

Safecard Servs., 926 F.2d at 1201; cf. Weisberg v. United

States Dept. of Justice, 627 F.2d 365, 369 (D.C. Cir. 1980)

(court holds that affidavit was inadequate because it was not

based upon personal knowledge of affiant or anyone else),

appeal on remand, 705 F.2d 1344 (D.C. Cir. 1983). Here, the

FBI submitted several declarations of David Lieberman, a

supervisor in the FOIA section of the FBI's records division,

who reviewed the information in his official capacity.

Similarly, the CIA submitted the declarations of John Wright

and Katherine Stricker, the persons responsible for directing

FOIA searches at the CIA and determining the applicability of

FOIA exemptions. These affidavits, although partly second-

hand, are sufficient to satisfy the government's burden of

submitting affidavits of responsible agency officials.

-27-

Plaintiff also makes numerous arguments directed at

just one of the defendant agencies. With respect to the FBI,

plaintiff contends that the FBI improperly limited its search

to "105, 106" references, rather than to all references.

This argument was first raised in an untimely motion for

reconsideration and was denied because it "should have been

raised earlier." This court, therefore, reviews the denial

only for an abuse of discretion. E.g., National Metal

Finishing Co. v. Barclays American/Commercial, Inc., 899 F.2d

119, 125 (1st Cir. 1990). In any case, plaintiff's argument

is contrary to the facts. The FBI submitted a declaration

explaining that the "105, 106" reference was contained on a

1969 FOIA search slip, not plaintiff's 1987 search slip.

Consequently, the agency did not limit its search for

documents responsive to plaintiff's FOIA request to the "105,

106" reference. The district court clearly did not abuse its

discretion in denying plaintiff's motion for reconsideration

on the basis of the scope of the FBI's search.

With respect to the CIA, plaintiff complains that

summary judgment was improper because the CIA's affidavits

were not sufficiently detailed to enable plaintiff to

challenge the adequacy of the CIA's search. Plaintiff

further argues that, in any case, it is clear that the CIA's

search was inadequate because a 1963 memorandum released to

plaintiff contains a reference to other "records," which have

-28-

not been disclosed. According to plaintiff, the potential

existence of other records with no explanation by the CIA for

its failure to produce those other records demonstrates the

inadequacy of the CIA's search for responsive documents.

Plaintiff's argument regarding the sufficiency of

the CIA's affidavits is unpersuasive. The CIA submitted

several public declarations by John H. Wright, its

Information and Privacy Coordinator, explaining that the CIA

conducted two searches first, of officially released

documents15 and, second, of the records of the three

Directorates where it believed responsive records would be

found, including the Directorates of Operations (records of

clandestine foreign intelligence and counter intelligence

activities), Intelligence (records interpreting important

world events), and Administration (records of employees).

Wright's declaration of December 7, 1988 sets forth in a very

general manner the method by which the CIA retrieves

documents.16 The Wright declaration further explains that

15. The search of officially released documents yielded one
responsive document, which was forwarded to plaintiff. This
document, a March 20, 1963 memorandum, states that the CIA
had no connection with plaintiff's husband or the flight in
question.

16. The Wright declaration explains that the CIA's records
systems are diverse, decentralized, and compartmentalized in
order to enhance security of documents by minimizing
accidental disclosure of sensitive information. With respect
to the CIA's method of retrieving documents, the declaration
states the following:

-29-

3. The nature and design of the CIA records
systems are determined by the nature of the Agency's
intelligence activities and responsibilities. Documents
are generally retrievable if they are in a file which
contains a collection of documents on the same subject,
and the subject is indexed in a system that alerts a
searcher to the existence and location of the file, or
if the document is individually indexed in a system that
alerts a searcher to the document. If information is
stored other than on paper, it must be indexed in a
manner which alerts the searcher to its existence and
location. The manner in which the CIA indexes
information for storage and retrieval purposes varies
according to the nature of the intelligence activity
that the records are intended to support. Our ability
to retrieve data from a given records system is
determined by what information has been stored in the
system and how the system is designed for retrieval
purposes.
4. It is crucial to note that the CIA records
storage processing and retrieval systems are designed
and programmed to respond to the particular intelligence

responsibilities and problems of the component using the
system. For example, a component charged with political
analysis of a particular foreign power may organize its
files under various subjects--names of prominent
politicians, party names, geographical concentrations of
power, etc. Another component, with a different
intelligence mission, may set up its files in a totally
different fashion. Accordingly, the structure of
particular records systems are not uniform but, rather,
differ according to the intelligence responsibilities of
the component maintaining the system. Moreover, some
records systems are such an integral part of the
associated intelligence activity that the record system
necessarily bears the same classification as the
intelligence activity. . . .
5. When Privacy Act and FOIA requests are received
in the Information Services Division (ISD), the initial
reception point for all such requests received by the
CIA, a determination is made by experienced personnel in
ISD as to what components of the Agency might reasonably
be expected to possess records which might be responsive
to each request. Copies of the requesting letter are
then forwarded to each such component with instructions
that a search be made for any responsive documents.
This initial step is called "tasking" of the components.
Searches are then routinely made among all indices that

-30-

some of the record systems searched in response to

plaintiff's FOIA request are classified.17 According to

Wright, "a detailed discussion would entail the disclosure of

classified information, including information revealing

intelligence sources and methods." Since public disclosure

of additional details about the CIA's structure and its FOIA

search here was not possible, the CIA submitted an in camera

declaration detailing the searches conducted by the CIA for

responsive documents. After reviewing the public and in

might logically have any information relating to . . .
the substance of request under the FOIA. In this
regard, it is necessary to understand that the search
for records in each individual component is dependent
upon the component's unique indexing system. The
indices are the source of any clues into the existence
and location of responsive records. For example, the
indexing systems for records contained in the
Directorate of Operations (DO) are not the same as those
used in the Office of Security (OS). Therefore, the
search for records in each component must be carried out
by an individual who has knowledge of that component's
indexing system. . . .

The declaration, however, provides no details as to the CIA's
search for documents responsive to plaintiff's FOIA request.

17. The National Security Act, 50 U.S.C. 403g, provides in
relevant part:

In the interests of the security of the foreign
intelligence activities of the United States and in
order further to implement the proviso of section
403(d)(3) of this title that the Director of Central
Intelligence shall be responsible for protecting
intelligence sources and methods from unauthorized
disclosure, the Agency shall be exempted from . . . the
provisions of any other law which requires the
publication or disclosure of the organization,
functions, names, official titles, salaries, or numbers
of personnel employed by the Agency.

-31-

camera declarations of Mr. Wright, we are satisfied that the

CIA's search was "reasonably calculated to discover the

requested documents." See Safecard Servs., 926 F.2d at 1201.

As the CIA has provided relatively detailed

affidavits demonstrating the reasonableness of its search, we

reject plaintiff's argument regarding the 1963 memorandum's

reference to other "records." As the district court noted,

the fact a 1963 document refers to the existence of other

records does not independently generate an issue of material

fact rendering summary judgment improper so long as

reasonably detailed, nonconclusory affidavits demonstrate the

reasonableness of the agency's search performed in 1990.

See, e.g., Miller, 779 F.2d at 1385.

As to the Customs Service, plaintiff contends that

summary judgment on the adequacy of the agency's search was

improper because (1) the Customs Service improperly limited

its search to its automated Treasury Enforcement

Communications System ("TECS"); (2) the declarations

submitted by the Customs

Service are inconsistent; and (3) the Customs Service did not

search possible border crossing records for the period prior

to 1982 because it would involve "significant effort."

Plaintiff's first two arguments are interrelated

and neither has any merit. The Custodian of Records for all

electronic records, Ellen Mulvenna, submitted three separate

-32-

detailed affidavits explaining the structure of the Customs

Service's record systems. Plaintiff suggests that the

Mulvenna declarations are inconsistent because the first

declaration states that the original TECS records date back

to the early 1970's and the second declaration states that

all investigatory records, including records in the 1960's,

are included in the TECS. Contrary to plaintiff's assertion,

these statements appear to be fully consistent. According to

the later Mulvenna affidavits, the TECS system was created in

1970. At that time, all existing records were placed in the

TECS. Therefore, as explained in the third Mulvenna

affidavit, the Customs Service's search was appropriately

limited to the TECS system since "[a]ny information on

Plaintiff's missing husband that might have been contained in

the records of the U.S. Customs Service as of the date that

the TECS system was created in 1970 would have been placed in

the TECS data system."

Plaintiff's challenge to the adequacy of the

Customs Service's search is also unpersuasive. While the

government's declarations acknowledged that a search of

border crossing data would involve "significant effort," they

also made clear that such data only exists for dates after

1976, fifteen years after plaintiff's husband disappeared.

It would seem reasonable, therefore, not to have searched the

-33-

border crossing data, quite apart from any special effort

involved.

Plaintiff's challenges to the State Department's

searches also lack merit. Plaintiff complains that (1) the

State Department did not identify who conducted the search or

specify the background and experience of that person; (2) the

State Department's declaration leaves open the inference that

some sources that are only 'likely' to contain information

were not searched; and (3) the declaration does not include a

"comprehensive listing of 'decentralized record systems.'"

There is, however, no general requirement for an

agency to disclose the identity and background of the actual

persons who process FOIA requests. Plaintiff relies on

Weisberg, 627 F.2d at 371, which reversed a district court's

grant of summary judgment because the agency affidavits did

not "denote which files were searched or by whom, [did] not

reflect any systematic approach to document location, and

[did] not provide information specific enough to enable

[plaintiff] to challenge the procedures utilized." Plaintiff

reads Weisberg too broadly. See Perry, 684 F.2d at 127

(noting that Weisberg "involved rather special facts that

tended to cast considerable doubt on the adequacy [of the

agency's search]" because "the agency's own assertions

supported an inference that specifically identified material,

solicited by the requester, might have remained in the

-34-

agency's possession."). The point of Weisberg and subsequent

cases is that search methods should be ones reasonably

calculated to locate the requested information, assuming it

exists. The State Department's declaration suffices to

demonstrate that its search methods met this standard.18

Plaintiff's second argument is that the State

Department's declaration "leaves open the inference that some

sources that are only 'likely' to contain information were

not searched." See Oglesby, 920 F.2d at 68 ("agency cannot

limit its search to only one record system if there are

others that are likely to turn up the information

requested"). Plaintiff appears to base this inference upon a

letter from the State Department declaring that it searched

the two record systems "most likely to contain the

information" requested. However, a subsequent State

18. The State Department's declaration explains that
responsive records, "if they existed, would likely be
expected to be contained in two records systems, namely: the
Central Records; and the Office of Overseas Citizens Services
[OCS]." While name searches of two of the three categories
of Central Records files (the Automated Document System and
the Lot Files) turned up no records, a name search of the
"personality cross-reference" to the Central Foreign Policy
Files (a third category of Central Records) identified
twenty-three responsive documents which had been sent to the
OCS "for action." The OCS retirement manifests along with a
document-by-document search revealed that nineteen of these
documents "had been destroyed in May, 1979, in accordance
with approved disposition schedules," leaving only "four
documents responsive to this request [that] were not
destroyed." Three of these documents were produced to
plaintiff with no excisions, and the fourth was produced with
minor excisions based on personal privacy grounds pursuant to
FOIA Exemption 6.

-35-

Department declaration by its Information and Privacy

Coordinator, Frank M. Machak, declared that searches were

conducted of all "record systems" that were "likely" to

contain the information requested.

Finally, plaintiff's demand for a "comprehensive

listing of 'decentralized records systems'" is also

unfounded. "There is no requirement that an agency search

every record system." Oglesby, 920 F.2d at 68. Nor is there

any requirement that an agency provide a comprehensive list

of record systems unlikely to contain responsive records.

Rather, an agency need only provide "[a] reasonably detailed

affidavit, setting forth the search terms and the type of

search performed, and averring that all files likely to

contain responsive materials . . . were searched," see, e.g.,

id., as well as a general description of the structure of the

agency's file system demonstrating why further search would

be overly burdensome, see Church of Scientology of Cal., 792

F.2d at 151. Because the State Department's affidavits fully

meet this standard, summary judgment on the adequacy of the

State Department's search was inappropriate.19

19. Plaintiff also suggests, without further argument or
explanation, that the State Department should have searched
the records of the "Cuba Desk" and the "Bureau of Politico-
Military Affairs." Plaintiff's suggestion seems factually
misguided. It appears that the records of the "Cuba Desk"
(the formal name for which is apparently the Office of Cuban
Affairs in the Bureau of Inter-American Affairs) were
searched. The Bureau of Politico-Military Affairs, on the
other hand, is apparently concerned with remote issues such

-36-

With respect to the DIA's search, plaintiff

contends that summary judgement was inappropriate because (1)

a document that was forwarded from the FBI to the DIA in 1963

was not located by the DIA in its 1990 search; and (2) the

DIA's declaration does not adequately explain the data bases

searched or the procedures for information retrieval.

As to plaintiff's first argument, "the fact that a

document once existed does not mean that it now exists; nor

does the fact that an agency created a document necessarily

imply that the agency has retained it." Miller, 779 F.2d at

1385. Thus the failure of the DIA to produce a copy of a

document, identified in a 1963 memo, does not mean that the

DIA's search in 1990 was inadequate, particularly when the

DIA has demonstrated that its 1990 search was reasonably

calculated to uncover responsive documents. Plaintiff's

second contention also lacks merit. The DIA's declaration

adequately explains the two data bases it searched.

According to the DIA's declaration, the Central Reference

Division of the DIA Directorate for Technical Services and

Support "searched its two data bases: the Intelligence

Report Index Summary Archive (IRISA) and the All Source

Document Index Archive (ASDIA)." IRISA "contains

as arms control, nuclear non-proliferation, outer space and
the coordination of military-related activities with foreign
policy. The records of the Bureau of Politico-Military
Affairs, therefore, seem unlikely to contain any responsive
documents.

-37-

bibliographic references to all human intelligence

information reports held or produced by DIA." ASDIA

"contains bibliographic citations to all intelligence

studies, contract reports, open source materials maintained

in the DIA library." These two data bases, therefore,

included all materials maintained by the DIA that were likely

to contain responsive documents. A search of these two data

bases failed to produce any information pertaining to

plaintiff's husband. While the DIA's declaration could have

described the actual search conducted in more detail, any

"arguable inadequacy of the search descriptions" is "no more

than marginal and does not render the grant of summary

judgment appropriate." See Perry, 684 F.2d at 127.

Finally, plaintiff contends that the INS's search

was inadequate because it took seventeen months to locate a

responsive file and because the file was lost in 1985 and not

found and turned over to plaintiff until after her appeal was

taken in 1992. Neither of these arguments is persuasive.

Plaintiff's first contention was raised initially in an

untimely motion for reconsideration. Therefore, we review

the district court's denial of this motion only for abuse of

discretion. See, e.g., National Metal Finishing Co., 899

F.2d at 125. Delay in locating a document "is significant

only to the extent that evidence shows that the delay

resulted from bad faith refusal to cooperate." Miller, 779

-38-

F.2d at 1386; accord Perry, 684 F.2d at 128 (court upholds

adequacy of agency search notwithstanding delay of over one

and one half years); Goland, 607 F.2d at 355 (agency delay,

by itself, is not indicative of lack of good faith). Because

plaintiff presented no evidence to suggest that the

seventeen-month delay resulted from bad faith, the district

court properly denied plaintiff's untimely motion for

reconsideration.

Plaintiff's second argument fares no better.

Essentially, plaintiff argues that the fact that a file was

lost and then found undercuts the DIA's contention that its

search was reasonable. See Goland, 607 F.2d at 369-70. In

Goland, one week after the D.C. Circuit affirmed a district

court's conclusion that the CIA had conducted an adequate

search, see 607 F.2d 339 (D.C. Cir. 1978), the CIA informed

the Justice Department that it had discovered additional

documents responsive to the plaintiff's FOIA request while

the appeal had been pending. Although some of these

documents were subsequently released to the plaintiff, the

plaintiff sought to have the D.C. Circuit reconsider its

opinion as to the adequacy of the CIA's search, arguing that

the discovery of additional documents undercut the finding

that the search had been reasonable. The D.C. Circuit

rejected the argument, stating that "[t]he issue was not

whether any further documents might conceivably exist but

-39-

whether [the agency's] search for responsive documents was

adequate." 607 F.2d at 369-70. Although the court noted

that the discovery of additional documents may be evidence

that a search is not thorough, the court was satisfied that

"the original failure to uncover the documents was wholly

understandable and not inconsistent with the district court's

finding that the search was thorough." Id. at 370, 372; see

also Miller, 779 F.2d at 1386 (discovery of additional

documents is not conclusive of agency bad faith since belated

discovery may result merely from administrative inefficiency

or reluctant diligence on the part of the agency); Perry, 684

F.2d at 128 (discovery of additional documents indicated

"neither artifice nor subterfuge but rather, at worse (sic),

administrative inefficiency.").

Similarly here, the INS submitted a declaration to

the district court, explaining that the three-page document

responsive to plaintiff's FOIA request was lost in transit

from the Federal Records Center in Atlanta to the INS Central

Office in Washington, D.C. More important, the INS submitted

an additional declaration detailing the extensive steps taken

by the INS to locate the missing file, including computer and

manual shelf-by-shelf searches. In light of the detailed

affidavits demonstrating the adequacy of the INS's initial

search and the subsequent search for the missing file, we are

not persuaded that the district court was incorrect in

-40-

concluding that the searches were reasonable and in good

faith. Instead, the agency's initial inability to find the

missing file appears to be the result of administrative

inefficiency. Nor can we say that the agency's subsequent

discovery and release of the lost file impugns the integrity

of the INS's affidavits. Rather than bad faith, we think the

forthright disclosure by the INS that it had located the

misplaced file suggests good faith on the part of the agency.

See Meeropol, 790 F.2d at 953 ("what is expected of a law-

abiding agency is that it admit and correct error when error

is revealed.").

In sum, we are satisfied, as was the district

court, that each defendant agency presented reasonably

detailed, nonconclusory affidavits demonstrating the

reasonableness of their respective searches. We reject

plaintiff's suggestion that the agencies' affidavits were

insufficient to support summary judgment on the issue of the

adequacy of the agencies' searches.

D. FOIA Exemptions

Plaintiff contends that the district court

improperly upheld the FBI's withholding of information under

FOIA Exemption 6 and asks us to join all other defendants in

this argument. Exemption 6 permits withholding of the

following:

personnel and medical files and similar
files the disclosure of which would

-41-

constitute a clearly unwarranted invasion
of personal privacy.

5 U.S.C. 552(b)(6).

It is not surprising that plaintiff was unable to

find any justification under Exemption 6 for the FBI's

excisions since the FBI did not claim Exemption 6 as the

basis of its withholding. Rather, it claimed Exemption

7(C),20 which permits the withholding of

records or information compiled for law
enforcement purposes, but only to the
extent that the production of such law
enforcement records or information . . .
(C) could reasonably be expected to
constitute an unwarranted invasion of
personal privacy.

5 U.S.C. 552(b)(7)(C).

In analyzing Exemption 7(C) claims, courts balance

"privacy" interests against any "public interest" in

disclosure. United States Dept. of Justice v. Reporters

Committee for Freedom of the Press, 489 U.S. 749, 762 (1989).

The FBI asserted three interests warranting privacy

protection: (1) the names and initials of low-level FBI

agents and support personnel; (2) the names and identifying

20. The FBI additionally relied on FOIA Exemption 7(D) to
justify certain withholdings. See 5 U.S.C. 552(b)(7)(D).

Exemption 7(D) provides protection for confidential source
information. See, e.g., Providence Journal Co. v. United

States Dept. of Army, No. 92-1166, slip op. at 20-21 (1st

Cir. December 8, 1992). As plaintiff has failed to present
any argumentation with respect to Exemption 7(D), she has
waived any claims of error regarding this exemption. See,

e.g., Elgabri v. Lekas, 964 F.2d 1255, 1261 (1st Cir. 1992).

-42-

data of third parties interviewed in the course of the FBI's

investigation; and (3) the names and identifying data of

third parties mentioned as subjects of the FBI's

investigation. The FBI's declaration details the potential

for harassment, reprisal or embarrassment if this information

is disclosed. FBI agents, support personnel, confidential

sources, and investigatory targets all have significant

privacy interests in not having their names revealed. New

England Apple Council v. Donovan, 725 F.2d 139, 142 (1st Cir.

1984) (career public servants); Safeguard, 926 F.2d at 1205

(investigatory targets); Fitzgibbon, 911 F.2d at 767

(suspects, witnesses, and investigators all have strong

privacy interest "in not being associated unwarrantedly with

alleged criminal activity.").

The Supreme Court recently held that the only

cognizable "public interest" for purposes of FOIA is "the

citizens' right to be informed about 'what their government

is up to.'" Reporters Committee, 489 U.S. at 773. "That

purpose . . . is not fostered by disclosure of information

about private citizens that is accumulated in various

governmental files but that reveals little or nothing about

an agency's own conduct." Id.; Federal Labor Relations Auth.

(FLRA) v. United States Dept. of Navy, 941 F.2d 49, 57 (1st

Cir. 1991) ("[w]hatever non-zero privacy interest at stake,

under Reporters Committee, that interest cannot be outweighed

-43-

by a public interest in disclosure -- whatever its weight or

significance -- that falls outside of the FOIA-cognizable

public interest in permitting the people to know what their

government is up to."); cf. Providence Journal Co. v. United

States Dept. of Army, No. 92-1166, slip op. at 35-36 (1st

Cir. December 8, 1992) (public has interest in disclosure of

governmental misconduct by high ranking agency officials).

Plaintiff here has failed to suggest how the

disclosure of the names would reveal what the government is

up to. We need not, therefore, dwell upon the balance

between privacy and public interests: "something . . .

outweighs nothing every time."21 Fitzgibbon, 911 F.2d at

768 (quoting NARFE v. Horner, 879 F.2d 873, 879 (D.C. Cir.

1989), cert. denied sub nom. NARFE v. Newman, 494 U.S. 1078

(1990). Accordingly, plaintiff's claim for disclosure fails

under Exemption 7(C).

Plaintiff's claim for disclosure fits no better

within Exemption 6. The only agency actually to rely on

Exemption 6 for any withholdings is the State Department. In

its declaration, the State Department explained that it had

21. For the same reason, the effect of the passage of time
upon the individual's privacy interests is simply irrelevant
when a FOIA requestor is unable to suggest any public
interest in the disclosure of names that would reveal what
the government is up to. Privacy interests, no matter how
minimal, will outweigh a nonexistent public interest. We
therefore reject plaintiff's suggestion that the FBI should
have considered "the mitigation of time" on documents over
twenty-five years old.

-44-

withheld the names and other identifying information (i.e.,

date and place of birth, address and occupation), because

disclosure could subject individuals or their families to

harassment or embarrassment, and the public interest in

disclosure, if any, was minimal. This characterization seems

entirely justified.

As with Exemption 7(C), courts must balance the

relative privacy and public interests to determine whether

information is properly withheld under Exemption 6. Although

"the Government's burden in establishing the requisite

invasion of privacy to support an Exemption 6 claim is

heavier than the standard applicable to Exemption 7(C),"

United States Dept. of State v. Ray, 112 S. Ct. 541, 546

(1991) (citing Reporters Committee, 489 U.S. at 756), the

teachings of Reporters Committee with regard to the public

interest side of the equation apply equally in the Exemption

6 context, see id. at 549; FLRA, 941 F.2d at 56. Therefore,

any inquiry into the public interest in disclosure of

withheld information must focus "on the citizens' right to be

informed 'about what their government is up to.'" Id.

(quoting Reporters Committee, 489 U.S. at 773). Because

plaintiff has failed to point out how the withheld

information would reveal anything significant about the State

Department's "performance of its statutory duties," id.

(quoting Reporters Committee, 489 U.S. at 773), and because

-45-

the State Department has asserted a legitimate privacy

interest in withholding names and other identifying

information, we hold under the teachings of Ray and Reporters

Committee that disclosure would be a "clearly unwarranted

invasion of personal privacy." Accordingly, the information

was properly withheld under the FOIA Exemption 6.22

D. Discovery

Plaintiff contends that the district court

improperly granted protective orders barring certain

interrogatories and a proposed deposition of Dr. Orlando

Bosch-Avila, an individual incarcerated in federal prison in

Miami.23 Neither claim warrants appellate intervention

into the district court's broad discretion in managing

pretrial discovery. Intervention would be warranted "only

upon a clear showing of manifest injustice, that is, where

22. Because plaintiff does not challenge any of the other
bases for withholdings asserted by the government, plaintiff
has waived any claims concerning other FOIA exemptions.
E.g., Playboy Enterprises, Inc. v. Public Serv. Comm'n, 906

F.2d 25, 40-41 (1st Cir.), cert. denied sub nom. Cruz v.

Playboy Enterprises, Inc., 111 S. Ct. 388 (1990).

23. In support of her motion to take the deposition of Dr.
Bosch-Avila, plaintiff submitted the affidavit of Sherry Ann
Sullivan. Ms. Sullivan, a private investigator who is also
the head of "The Forgotten Families of the CIA," had brought
a similar FOIA suit to plaintiff's. In her affidavit,
Sullivan alleged that a confidential informant had personal
knowledge that Dr. Bosch-Avila had worked with both Robert
Thompson and her father, Geoffrey Sullivan, on CIA-sponsored
projects. Ms. Sullivan further alleged that the testimony of
Dr. Bosch-Avila would be "sufficient for the CIA to locate
the information and documents which have been requested by
Plaintiff and which the C.I.A. says it cannot locate."

-46-

the lower court's discovery order was plainly wrong and

resulted in substantial prejudice to the aggrieved party."

Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179, 186

(1st Cir. 1989). Examination into the facts relative to the

protective orders does not reveal "manifest injustice."

Plaintiff's barred interrogatories were served

approximately six months after the discovery deadline had

lapsed. Plaintiff did not present any compelling reason for

having ignored the deadline. With respect to the deposition

of Dr. Bosch-Avila, the government moved for a protective

order barring the deposition until plaintiff obtained the

consent of Dr. Bosch-Avila, a federal prisoner, and gave

advance notice to government counsel. The district court

granted the motion "without prejudice to the deposition of

the subject being noticed with at least 10 days notice to

defense counsel." Plaintiff did not seek to depose Dr.

Bosch-Avila at any later date. It thus appears that

plaintiff's failure to obtain the discovery in issue was the

result, in large part, of her own inaction. The district

court did not abuse its discretion in ruling as it did.

E. Attorney's Fees

Plaintiff contends that the district court erred in

not awarding her attorney's fees. A decision as to whether

to award attorney's fees is a matter within the sound

discretion of a trial court and will be reversed only for an

-47-

abuse of that discretion. Aronson v. HUD, 866 F.2d 1, 2, 4

(1st Cir. 1989).

Under the FOIA, a district court may award

attorney's fees and costs to a plaintiff who has

"substantially prevailed." 5 U.S.C. 552(a)(4)(E). In

determining whether a plaintiff has "substantially prevailed"

within the meaning of 5 U.S.C. 552(a)(4)(E), a district

court must conduct a two-step inquiry. First, did plaintiff

"substantially prevail"? Second, if so, is plaintiff

entitled to an award based on a balancing of equitable

factors? Crooker v. United States Parole Comm'n, 776 F.2d

366, 367 (1st Cir. 1985).24

The district court in this case denied plaintiff's

motion for attorney's fees against all of the defendant

agencies, with the exception of the CIA,25 on the basis of

the first inquiry i.e., plaintiff had not substantially

24. These factors include the following: "(1) the benefit
to the public, if any, derived from the case; (2) the
commercial benefit to the complainant; (3) the nature of the
complainant's interest in the records sought; and (4) whether
the government's withholding of the records had a reasonable
basis in law." Aronson, 866 F.2d at 3 (quoting Crooker, 776

F.2d at 367); see also S. Conf. Rep. No. 1200, 93d Cong., 2d

Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 6267, 6285, 6288

(indicating that Congress intended courts to consider these
factors in determining whether to exercise their discretion
to award attorney's fees pursuant to 5 U.S.C.
552(a)(4)(E)).

25. The district court decided to await resolution of the
CIA's appeal before deciding the issue of attorney's fees as
to the CIA.

-48-

prevailed against any of the defendant agencies. This

conclusion was entirely correct. In order to prove that a

plaintiff substantially prevailed, a plaintiff must establish

that the filing of the litigation was "necessary" and "had a

causative effect on the disclosure of the requested

information." Crooker v. United States Dept. of Justice, 632

F.2d 916, 932 (1st Cir. 1980) (citing Vermont Low Income

Advocacy Council, Inc. (VLIAC) v. Usery, 546 F.2d 509, 513

(2d Cir. 1976)). At the time that the district court ruled

on the attorney's fee question, plaintiff's suit had resulted

in the disclosure of no documents from the DIA, the Customs

Service, or the INS. The district court therefore was

clearly justified in denying attorney's fees as to these

defendant agencies. Although the INS subsequently found and

delivered a lost document, there is no showing that the suit

was the cause of the delivery of this document. We see no

reason, therefore, to disturb the district court's finding

that plaintiff did not substantially prevail against the INS.

See Weisberg v. United States Dept. of Justice, 848 F.2d

1265, 1271 (D.C. Cir. 1988); VLIAC, 546 F.2d at 514-15 (FOIA

requester did not substantially prevail despite fact that

agency lost document and did not relocate it until after

litigation was filed).

Nor do we fault the district court's conclusion

that plaintiff did not substantially prevail against either

-49-

the State Department or the FBI. Both agencies produced

documents to plaintiff after suit was filed. The chronology,

by itself however, is not determinative. E.g., Cazalas v.

United States Dept. of Justice, 660 F.2d 612, 619 (5th Cir.

1981) ("the mere fact that the documents requested were not

released until after the suit was instituted, without more,

is not enough to establish that a complainant has

substantially prevailed."); Cox v. United States Dept. of

Justice, 601 F.2d 1, 6 (D.C. Cir. 1979) (accord). With the

exception of a single name which the district court ordered

the FBI to disclose, plaintiff presented no evidence

suggesting that this litigation was necessary to obtain

requested information or that the litigation caused the

agency to produce the information. E.g., Crooker, 632 F.2d

at 922. Moreover, as the district court recognized, the

disclosure of a single name was of minimal importance when

compared with plaintiff's overall FOIA request. E.g., Union

of Concerned Scientists v. United States Nuclear Regulatory

Comm'n, 824 F.2d 1219, 1226 (D.C. Cir. 1987); Chilivis v.

SEC, 673 F.2d 1205, 1213 (11th Cir. 1982). Accordingly,

there was no abuse of discretion in the court's finding that

plaintiff did not substantially prevail against the FBI.

Plaintiff argues that this suit resulted in

progressively greater disclosure from the FBI, thus meeting

the causation requirement in 5 U.S.C. 552(a)(4)(E).

-50-

According to plaintiff, after initiation of the litigation,

she was provided with material that had previously been

redacted. This argument, however, was raised for the first

time in an untimely motion for reconsideration, which the

district court properly denied. The FBI submitted an

affidavit explaining that the release of the great bulk of

the redacted material was the result of inter-agency process,

not this litigation, and the release of the remainder of the

previously redacted material occurred after the agency became

aware that the material had previously been released to

another individual (thereby requiring its release to

plaintiff). The district court was within its discretion in

concluding that plaintiff had not substantially prevailed,

and did not abuse its discretion by refusing to reconsider

this decision.

II.

The district court's order of November 14, 1990

compelling the CIA to disclose the third full paragraph on

page 2 of the December 22, 1961 memorandum is reversed.

The district court's subsequent orders granting

summary judgment to the CIA, the FBI, the State Department,

the Customs Service, the INS, and the DIA, as well as its

decision not to award attorney's fees, are all affirmed.

So ordered. Costs to appellees in No. 92-1615 and

to appellant in No. 91-1334.

-51-

-52-